IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESTERN AGRICULTURAL INSURANCE COMPANY,

    Plaintiff,

    v.        No. 1:19-cv-00679

LEGACY MEDICAL SERVICES, LLC,
JACQUELINE MARINOVICH, FNP-C, and
MARVA JOHNSTON, NP,

    Defendants.

## COMPLAINT FOR DECLATORY RELIEF

Plaintiff Western Agricultural Insurance Company ("Western Agricultural") hereby brings this complaint for declaratory relief against Legacy Medical Services, LLC ("Legacy Medical") Jacqueline Marinovich and Marva Johnston (sometimes collectively referred to as Defendants) and alleges as follows:

## THE PARTIES

1.    Plaintiff Western Agricultural Western Agricultural Insurance Company is a member of the "Farm Bureau" network and is a foreign insurance company incorporated under the laws of the State of Iowa and maintains its principal place of business in West Des Moines, Iowa. Western Agricultural does business in the State of New Mexico and has complied with the laws of the State of New Mexico pertaining to corporations engaged in the insurance business.

2.    Defendant Legacy Medical Services, LLC is a domestic limited liability company incorporated in the State of New Mexico with a principal place of business in Hobbs, New Mexico.

3.    Upon information and belief, the members of Legacy Medical Services, LLC are Stephen Callaway, who resides in Hobbs, New Mexico and is a citizen of the State of New Mexico; Casey Strasner, who resides in Hobbs, New Mexico and is a citizen of the State of New Mexico; Sam Callaway, who resides in Hobbs, New Mexico and is a citizen of the State of New Mexico;

and Toby Herring, who resides in Hobbs, New Mexico and is a citizen of the State of New Mexico. Accordingly, to the extent the citizenship of its members dictates Legacy Medical's citizenship, Legacy Medical is a citizen of the State of New Mexico.

4. Upon information and belief, Defendant Jacqueline Marinovich, FNP-C, f/k/a Jacqueline Crader, FNP-C, is a resident of Hobbs, New Mexico, and is a citizen of the State of New Mexico.

5. Upon information and belief, Defendant Marva Johnston, NP, is a resident of Hobbs, New Mexico, and is a citizen of the State of New Mexico.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

7. There is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. The claims at issue in this action arose in the District of New Mexico and Defendants are citizens of the State of New Mexico. Venue is, therefore, proper in this Court pursuant to 28 U.S.C. § 1391.

9. Declaratory relief is requested pursuant to 28 U.S.C. § 2201.

10. There is an actual justiciable controversy between Western Agricultural and Defendants regarding whether Western Agricultural has any duty to defend and/or indemnify Legacy Medical or its alleged employees, Ms. Marinovich and Ms. Johnston, under an insurance policy issued by Western Agricultural as set forth in more detail below. Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

## GENERAL ALLEGATIONS

*The Insurance Policy*

11. Western Agricultural issued Policy No. 601249200 to Named Insured Legacy Medical Services, LLC with a Policy Period of September 30, 2016 to September 30, 2017 (the "Policy").

12. A true and correct copy of the Policy is attached hereto as Exhibit A.

13. The Policy provides business liability coverage as follows:

**SECTION II – LIABILITY**
**A. Coverages**
    **1. Business Liability**
        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:
            **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability and Medical Expenses Limits of Insurance in Section II – Liability; and
            **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.
        No other obligation or liability to pay sums or perform acts or services is covered unless explicity provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.
        **b.** This insurance applies:
            **(1)** To "bodily injury" and "property damage" only if:
                **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
                **(b)** The "bodily injury" or "property damage" occurs during the policy period;

        \* \* \*

*See* Exhibit A, Policy, pp. 34-35.

14. The Policy sets forth the following exclusions:

**B. Exclusions**
    **1. Applicable to Business Liability Coverage**
This insurance does not apply to:
        \* \* \*
    **j. Professional Services**
"Bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:
        **(1)** Legal, accounting or advertising services;
        **(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3

 **(3)** Supervisory, inspection or engineering services;
 **(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice, or instruction;
 **(5)** Any health or therapeutic service treatment, advice, or instruction;
 **(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;
 **(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing devices;
 **(8)** Body piercing services; and
 **(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

*See* Exhibit A, Policy, pp. 37-40.

15. The Policy defines who is an insured:

**C. Who Is An Insured**
 **1.** If you are designated in the Declarations as:
  \* \* \*
  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
  \* \* \*
 **2.** Each of the following is also an insured:
  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:
   **(1)** "Bodily injury" or "personal and advertising injury":
    \* \* \*
    **(d)** Arising out of his or her providing or failing to provide professional health care services.

*See* Exhibit A, Policy, p. 45.

16. The Policy excludes punitive damages:

**PUNITIVE DAMAGES EXCLUSION**
This endorsement modifies insurance provided under the following:

4

>    BUSINESS AUTO COVERAGE FORM
>    BUSINESS OWNERS COVERAGE FORM – SECTION II – LIABILITY
>    COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>    COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM
>    GARAGE COVERAGE FORM
>    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
>  This insurance does not apply to liability for punitive or exemplary damages.

*See* Exhibit A, Policy, Punitive Damages Exclusion.

*The Underlying State Court Complaint*

17. On May 7, 2019, Kyla Davis, Ryan Davis, and Helen Laura Lopez, in her capacity as guardian ad litem of R.D., R.D., and R.D., minor children, filed suit against Legacy Medical Services, LLC, Jacqueline Crader, FNP-C, and Marva Johnston, NP in the First Judicial District Court, Santa Fe County, State of New Mexico, Cause No. D-101-CV-2019-01263 ("Underlying Action"). A copy of the Complaint is attached as Exhibit B.

18. Plaintiffs in the Underlying Action seek damages from Defendants relating to the medical care of Kyla Davis and the alleged "medical negligence" of Defendants. Exhibit B, Complaint, ¶ 97.

19. Plaintiffs in the Underlying Action allege that Legacy Medical and its Defendant nurse practitioners, in delivering Mrs. Davis' third child and rendering post-partum care, failed to conduct a necessary cardiac work-up or send Mrs. Davis to the emergency room when she was experiencing symptoms apparently related to cardiac issues. Exhibit B, Complaint, ¶¶ 11-74.

20. Underlying Action Plaintiffs claim Mrs. Davis ultimately went to the hospital where she was diagnosed with systolic heart failure, diastolic heart failure, symptomatic congestive heart failure, anasarca, post-partum cardiomyopathy, cardiomegaly, acute kidney injury due to sepsis, acute cystitis, sepsis, thrombocytopenic disorder, and ejection fraction 10-15% per 2-D echo likely due to post-partum cardiomyopathy. Exhibit B, Complaint, ¶¶ 68-70. They claim Mrs. Davis ultimately received a Left Ventricular Assist Device and was placed on a heart transplant list. Exhibit B, Complaint, ¶¶ 72-74.

21. Based on these allegations regarding Mrs. Davis' cardiac condition, the Underlying Action Plaintiffs claim Legacy Medical, through its nurse practitioners, was negligent in failing to

exercise ordinary care of medical facilities and medical providers.  Exhibit B, Complaint, ¶¶ 77 and 79.

22. Underlying Action Plaintiffs state that Legacy Medical acted or failed to act by: "negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurse practitioners, nurses and/or physicians on staff; non-existent, inadequate or inappropriate policies and procedures; failure to obtain and/or provide adequate medical consultations as represented would occur; and any other manner revealed in discovery" and other related claims.  Exhibit B, Complaint, ¶¶ 78, 80.

23. With respect to Crader and Johnston (Legacy Medical's alleged employees), Underlying Action Plaintiffs claim similarly that they failed to exercise ordinary care of other nurse practitioners in the treatment of Ms. Davis.  Exhibit B, Complaint, ¶¶ 84-96.

24. Plaintiffs in the Underlying Action claim that as a result of Defendants' "medical negligence," Mrs. Davis' medical condition progressively worsened to the degree that she required LVAD and may require cardiac transplant. Exhibit B, Complaint, ¶ 97.

25. Underlying Action Plaintiffs claim additionally to have experienced pain and suffering and emotional distress, and as a result they seek punitive damages, pre-judgment and post-judgment interest, and costs.  Exhibit B, ¶¶ 98-101 and Wherefore Clauses, (a)-(e).

### *Legacy Medical Tender to Western Agricultural*

26. Legacy Medical provided notice of the Underlying Action to Western Agricultural and demanded defense and indemnity under the Policy.

27. Because the claims arise out of the alleged medical malpractice of Defendants they fall squarely within the professional services exclusion of the Policy and are excluded. Accordingly, Western Agricultural provided notice to Legacy Medical that there was no duty to defend or indemnify Defendants for the claims in the Underlying Action.  *See* Exhibit C attached hereto.

## COUNT ONE – DECLARATORY RELIEF

28. Western Agricultural incorporates the allegations of paragraphs 1 through 27 of the Complaint as though fully set forth herein.

29. The rights and obligations of Western Agricultural and Defendants are in dispute and affected by the terms and conditions of the Policy at issue and New Mexico case law.

30. Specifically, a controversy between the parties exists regarding whether Defendant Legacy Medical and Defendant Jacqueline Marinovich and Defendant Marva Johnston are entitled to a defense and/or indemnification of the claims made against them in the Underlying Action.

31. Western Agricultural does not owe either a defense or indemnification obligation to Defendants because the claims in the Underlying Action involve claims for bodily injury and associated damages arising out of the medical treatment of Mrs. Davis and are excluded by the professional services exclusion in the Policy.

32. The exclusion applies regardless of whether the Underlying Action Plaintiffs claim negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by Legacy Medical, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

33. Western Agricultural has no duty to defend Defendants, any members of Legacy Medical and any of its employees in the Underlying Action because the insurance does not apply to any of the claims alleged in the Underlying Action.

34. The Underlying Action Plaintiffs also seek punitive damages, which are excluded from coverage in the Policy.

35. By reason of the foregoing, there now exists an actual justiciable controversy between Western Agricultural and Defendants in the Underlying Action as required by 28 U.S.C. § 2201. Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

WHEREFORE, Western Agricultural respectfully requests that this Court declare the rights and obligations of the parties hereto in accordance with Western Agricultural's contentions herein; specifically that:

(A) Judgment be entered in Western Agricultural's favor and the Court enter a declaration regarding the rights and obligations of each of the parties with respect to the dispute herein and find that there is no coverage under the Policy for the claims asserted in the Underlying Action;

(B) That it enter judgment declaring that Western Agricultural has no duty to defend or indemnify Legacy Medical, Jacqueline Marinovich and Marva Johnston for the claims asserted in the Underlying Action; and

(C) Awarding Western Agricultural such other relief, including its costs as this Court deems just and proper.

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

By: */s/ Jennifer A. Noya*
Jennifer A. Noya
Sonya R. Burke
Attorneys for Western Agricultural
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800