# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WESTERN AGRICULTURAL
INSURANCE COMPANY,

      Plaintiff/Third-Party Defendant,

vs.

LEGACY MEDICAL SERVICES, LLC;
JACQUELINE MARINOVICH, FNP-C;
and MARVA JOHNSTON, NP,

      Defendants,

LEGACY MEDICAL SERVICES, LLC,                    No. CIV 19-0679 JB\KRS

      Third-Party Plaintiff,

vs.

RANDY ATWOOD,

      Third-Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Western Agricultural Insurance Company's Motion to Dismiss Counterclaims by Legacy Medical Services, LLC, filed October 30, 2019 (Doc. 11)("MTD"). The Court held a hearing on December 18, 2019. <u>See</u> Clerk's Minutes at 1, filed December 18, 2019 (Doc. 29) The primary issues are: (i) whether the Court should dismiss the breach-of-contract claim of Defendant/Third-Party Plaintiff Legacy Medical Services, LLC ("Legacy Medical") -- a family practice and occupational medicine facility in Hobbs, New Mexico -- against Plaintiff Western Agricultural Insurance Company ("Western Agricultural") and Third-Party Defendant Randy Atwood for failure to state a claim, because Legacy Medical does not allege sufficient facts to support that Western Agricultural and its agent, Atwood, breached the

terms of the Insurance Policy, see Businessowners Coverage Form at 15-51, filed July 23, 2019 (Doc. 1-1)("Policy -- Part A"); Businessowners Coverage Form at 1-53, filed July 23, 2019 (Doc. 1-2)("Policy -- Part B"); Business Coverage Form at 1-26, filed July 23, 2019 (Doc. 1-3)("Policy -- Part C"),[1] that Western Agricultural and Atwood issued to Legacy Medical by not defending Legacy Medical against or indemnifying Legacy Medical for medical negligence claims that a former Legacy Medical patient brought against Legacy Medical in Davis v. Legacy Medical Services, LLC, D-101-CV-201901263 (County of Santa Fe, First Judicial District Court, State of New Mexico); (ii) whether the Court should dismiss Legacy Medical's claim pursuant to the Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -24, for failure to state a claim, because Legacy Medical does not allege sufficient facts to support that Atwood misrepresented the Insurance Policy's terms by making allegedly false statements about the Insurance Policy; and (iii) whether the Court should dismiss Legacy Medical's claim pursuant to the Unfair Insurance Practices Act, N.M. Stat. Ann. §§ 59A-16-4 to -30, for failure to state a claim, because Legacy Medical does not allege sufficient facts to support that Atwood misrepresented the Insurance Policy's terms by making allegedly false statements about the Insurance Policy.  The Court concludes that: (i) the Insurance Policy unambiguously excludes coverage for medical malpractice claims, and, thus, the Court dismisses the claim with prejudice, and that, alternatively, Legacy Medical has not alleged sufficient facts to support that Atwood had the authority to modify the Insurance Policy's terms and did so by misrepresenting the Insurance Policy's terms, and, thus,

---

[1]Western Agricultural provided Legacy Medical's Insurance Policy to the Court in three separate documents, which Western Agricultural attached to the Complaint for Declaratory Relief, filed July 23, 2019 (Doc. 1).  See Policy -- Part A; Policy -- Part B; Policy -- Part C.  This Memorandum Opinion and Order collectively refers to these three documents as the "Insurance Policy," and it individually cites to each document.

the Court dismisses the claim without prejudice; (ii) Legacy Medical has not alleged sufficient facts to support its Unfair Practices Act claim, because it pleads only conclusory allegations that Atwood misrepresented the Insurance Policy's terms by alleging that Atwood made false statements about the Insurance Policy without specifying the false statements that Atwood allegedly made, and because Legacy Medical does not identify which of the Unfair Insurance Practices Act's provisions Western Agricultural and Atwood allegedly violated and, thus, the Court dismisses the claim without prejudice; and (iii) Legacy Medical has not alleged sufficient facts to support its Unfair Insurance Practices Act claim, because it pleads only conclusory allegations that Atwood misrepresented the Insurance Policy's terms by alleging that Atwood made false statements about the Insurance Policy without specifying the false statements that Atwood allegedly made, and because Legacy Medical does not identify which of the Unfair Insurance Practices Act's provisions Western Agricultural and Atwood allegedly violated and, thus, the Court dismisses the claim without prejudice.  Accordingly, the Court grants the MTD, and Legacy Medical may file a motion to amend and attach its proposed Counterclaims and Third-Party Complaint.

## FACTUAL BACKGROUND

Although Western Agricultural is the plaintiff in this case, Legacy Medical brings Counterclaims against Western Agricultural and a Third-Party Complaint against Atwood, and, therefore, the Court takes its facts from the Answer of Defendant Legacy Medical Services, LLC, Counterclaim and Third-Party Complaint, filed September 27, 2019 (Doc. 6)("Legacy Medical Complaint"), as it must for a motion to dismiss.  See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the

plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).  Western Agricultural is an insurance company that is incorporated under the State of Iowa's laws, maintains its principal place of business in West Des Moines, Iowa, and conducts business through duly authorized agents in the State of New Mexico.  <u>See</u> Legacy Medical Complaint ¶ 1, at 8.  Atwood is a resident of Hobbs, New Mexico, and is a licensed insurance agent for Western Agricultural.  <u>See</u> Legacy Medical Complaint ¶ 2, at 8.

Legacy Medical "contracted" with Western Agricultural and Atwood "for coverage for medical malpractice which Legacy [Medical] understood it was obtaining."  Legacy Medical Complaint ¶ 12, at 10.  Atwood "was intimately aware" of Legacy Medical's "business and activities and undertook to advise and provide insurance product[s] and services to fully cover all of the various activities and businesses."  Legacy Medical Complaint ¶ 5, at 9.  Western Agricultural and Atwood made oral and written representations to Legacy Medical about the benefits, conditions, and terms of Legacy Medical's malpractice coverage policy.  <u>See</u> Legacy Medical Complaint ¶ 19, 26, at 11, 12.  Atwood made "business recommendations for insurance coverage" to Legacy Medical based on Western Agricultural's available insurance products and Atwood's knowledge of Legacy Medical's business activities.  Legacy Medical Complaint ¶ 6, at 9.  Legacy Medical "relied upon" Atwood's professional advice and recommendations, Legacy Medical Complaint ¶ 7, at 9, and Legacy Medical bought Western Agricultural's insurance products "based upon the advice and recommendations of Atwood," Legacy Medical Complaint ¶ 9, at 9.  A claimant has since filed a claim against Legacy Medical "for medical malpractice [and] asserting claims . . . for negligence and a request for coverage."  Legacy Medical Complaint ¶ 13, at 10 (citing <u>Davis v. Legacy Medical Services, LLC</u>, D-101-CV-201901263).  Atwood and Western Agricultural "denied coverage forcing Legacy to hire independent counsel to defend it in

the lawsuit." Legacy Medical Complaint ¶ 14, at 10.

## PROCEDURAL BACKGROUND

Western Agricultural filed this action on July 23, 2019, requesting that the Court declare that Legacy Medical's malpractice coverage policy does not entitle Legacy Medical to a defense and/or indemnification for the claims brought against Legacy Medical and its employees in <u>Davis v. Legacy Medical Services, LLC</u>, D-101-CV-201901263. <u>See</u> Complaint for Declaratory Relief ¶¶ 28-35, at 7, filed July 23, 2019 (Doc. 1). On September 27, 2019, Legacy Medical responded and filed Counterclaims against Western Agricultural and a Third-Party Complaint against Atwood. <u>See</u> Legacy Medical Complaint ¶¶ 1-39, at 8-14. Legacy Medical alleges that: (i) Western Agricultural and Atwood, "each and all of them, breached the contract with Legacy [Medical]" by denying coverage to Legacy Medical and not providing Legacy Medical's defense in <u>Davis v. Legacy Medical Services, LLC</u>, D-101-CV-201901263, Legacy Medical Complaint ¶¶ 10-17, at 9-10; (ii) Western Agricultural and Atwood violated the New Mexico Unfair Practices Act by making false and misleading representations about the insurance products and services that Legacy Medical would receive under its malpractice coverage policy, <u>see</u> Legacy Medical Complaint ¶¶ 18-24, at 11; (iii) Western Agricultural and Atwood violated the New Mexico Unfair Insurance Practices Act by making misrepresentations about Legacy Medical's malpractice coverage policy, <u>see</u> Legacy Medical Complaint ¶¶ 25-27, at 12; (iv) Atwood breached his fiduciary duty to Legacy Medical by inaccurately disclosing and explaining the terms of Legacy Medical's malpractice coverage policy, <u>see</u> Legacy Medical Complaint ¶¶ 28-31, at 12-13; (v) Atwood breached his duties as Legacy Medical's agent by providing inadequate coverage under Legacy Medical's malpractice coverage policy, <u>see</u> Legacy Medical Complaint ¶¶ 32-35, at 13; and (vi) Atwood was negligent by failing to procure adequate coverage for services that

Atwood knew that Legacy Medical provides, see Legacy Medical Complaint ¶¶ 36-39, at 14. Western Agricultural and Atwood now seek to dismiss Legacy Medical's claims against them. See MTD at 1.

### 1.    The MTD.

Western Agricultural filed the MTD on October 30, 2019.  See MTD at 1.  Western Agricultural contends that the primary issue in Legacy Medical's breach-of-contract claim is "whether Legacy Medical is covered for medical malpractice claims despite the applicable Insurance Policy's specific exclusion of certain professional services, including '[m]edical, surgical, dental, X-ray or nursing services treatment, advice, or instruction' and '[a]ny health or therapeutic service treatment, advice, or instruction.'"   MTD at 1 (quoting Policy -- Part B § II(B)(1)(j)(4)-(5), at 3, and citing Legacy Medical Complaint ¶ 12, at 10)(alterations in MTD and not in Policy -- Part B).  Western Agricultural argues that New Mexico's substantive insurance and contract law applies in this diversity action.  See MTD at 3.  Western Agricultural contends that the primary issue in Legacy Medical's claims under the Unfair Practices Act and the New Mexico Unfair Insurance Practices Act is whether "Western Agricultural made misrepresentations to Legacy Medical regarding the coverage provided by the policy."   MTD at 2 (citing Legacy Medical Complaint ¶¶ 19, 26, at 11, 12).

Western Agricultural first argues that Legacy Medical fails to state a claim for breach of contract.  See MTD at 3.  Western Agricultural asserts that it has no duty to defend Legacy Medical and that the Court can dismiss Legacy Medical's claims if their claims "fall outside the policy provisions and it can be concluded as a matter of law that there is no basis for indemnity."  MTD at 3 (citing State Farm & Cas. Co. v. Price, 1984-NMCA-036, ¶ 18, 684 P.2d 524, 528; Bernalillo Cty. Sheriffs Ass'n v. Cty. of Bernalillo, 1992-NMSC-065, ¶ 8, 845 P.2d 789, 792; Guar. Nat'l

Ins. Co. v. C de Baca, 1995-NMCA-130, ¶ 14, 907 P.2d 210, 214).  Western Agricultural avers that Legacy Medical's breach-of-contract counterclaim "fails to state a claim . . . because it does not point to any policy term that Western Agricultural is alleged to have breached."  MTD at 4. Western Agricultural argues that, based on the Legacy Medical Complaint's "threadbare" allegations, it is "entirely unclear how Western Agricultural is supposedly not complying with the insurance contract or which term of the insurance contract Wester [sic] Agricultural purportedly breached."  MTD at 4.

Western Agricultural asserts that Legacy Medical has alleged insufficient facts to support its breach-of-contract claim and that the Court should dismiss the claim.  See MTD at 4.  Western Agricultural argues, in the alternative, that, "even if Legacy Medical *had* satisfied the applicable pleading standards, the fact remains that the insurance contract is unambiguous and there has been no breach."  MTD at 4 (emphasis in original).  Western Agricultural notes that, in Davis v. Legacy Medical Services, LLC, D-101-CV-201901263, the plaintiffs' claims arise out of Legacy Medical's medical care and treatment.  See MTD at 5.  Western Agricultural says that the business liability coverage section of Legacy Medical's policy contains several exclusions.  See MTD at 5-7.  According to Western Agricultural, the plaintiff in Davis v. Legacy Medical Services, LLC, D-101-CV-201901263, alleges "bodily injury . . . as a result of Legal Medical's acts or omissions in connection with the provision of medical treatment and services."  MTD at 7 (emphasis in original).  Western Agricultural argues that the "insurance contract issued to Legacy Medical unambiguously excludes from coverage bodily injury caused by medical treatment and services."  MTD at 7 (citing Policy -- Part B § II(B)(1)(j)(4)-(5), at 3).  Western Agricultural asserts that, because of this unambiguous exclusion, "there can be no breach of contract in Western Agricultural's denial of coverage in connection with the" claims against Legacy Medical in Davis

v. Legacy Medical Services, LLC, D-101-CV-201901263, and "Legacy Medical's breach of contract claim against Western Agricultural should be dismissed."  MTD at 8.

Western Agricultural next argues that Legacy Medical fails to state a claim under the Unfair Practices Act.  See MTD at 8.  Western Agricultural notes that the Unfair Practices Act "provides remedies for unfair, deceptive, or unconscionable trade practices."  MTD at 8 (citing Valdez v. Metro. Prop. & Cas. Ins. Co., No. 11-0507, 2012 WL 1132414 at *19 (D.N.M. March 31, 2012)(Browning, J.); Truong v. Allstate Ins. Co., 2010-NMSC-009, ¶ 22, 227 P.3d 73, 80). Western Agricultural avers that Legacy Medical's allegations under the Unfair Practices Act "closely track language from [the Unfair Practices Act's] unfair practices definitions without adding any actual facts."  MTD at 8.  According to Western Agricultural, the Court should dismiss Legacy Medical's Unfair Practices Act counterclaim, because it "lacks any factual allegations regarding any specific statement or representation purportedly made by Western Agricultural beyond the statements contained in the insurance policy."  MTD at 8.

Last, Western Agricultural argues that Legacy Medical fails to state a claim under the Unfair Insurance Practices Act.  See MTD at 8.  Western Agricultural notes that the Unfair Insurance Practices Act "proscribes certain forms of misrepresentations, forbids untrue, deceptive, or misleading advertising, provides a cause of action for certain falsification of insurance records, [and] . . . imposes liability for a variety of unfair claims practices."  MTD at 8 (citing N.M. Stat. Ann. §§ 59A-16-4, -5, -8, -20).  Western Agricultural asserts that Legacy Medical's Unfair Insurance Practices Act counterclaim "alleges generally that unspecified conduct by Western Agricultural violated one or more of" the Unfair Insurance Practices Act's provisions, and that Legacy Medical does not specify which provision Western Agricultural purportedly has violated. MTD at 8-9.  According to Western Agricultural, Legacy Medical's allegations do not comply

with rule 8(a)(2) of the Federal Rules of Civil Procedure, which "requir[es] a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  MTD at 9 (quoting Fed. R. Civ. P. 8(a)(2)).  Western Agricultural argues that, because "Legacy Medical's paucity of factual allegations is fatal," the Court should dismiss Legacy Medical's Unfair Insurance Practices Act counterclaim.  MTD at 9 (citing Fed. R. Civ. P. 12(b)(6)).

      **2.**    **The Response.**

Legacy Medical responded on November 22, 2019.  See Defendant Legacy Medical Services, LLC's Response in Opposition to Western Medical Insurance Company's Motion to Dismiss Counterclaims by Legacy Medical Services, LLC at 1, filed November 22, 2019 (Doc. 23)("Response").  It argues that the Legacy Medical Complaint "set[s] forth sufficient facts" to state a claim for: (i) breach of contract; (ii) violation of the Unfair Practices Act; and (iii) violation of the Unfair Insurance Practices Act.  Response at 2.  Legacy Medical contends that the Legacy Medical Complaint does not lack factual allegations and is "clear" that Western Agricultural "breached the [policy's] provision relating to its duty to provide a defense to Legacy under the circumstances and policy."  Response at 2.  Legacy Medical agrees with Western Agricultural that New Mexico law applies.  See Response at 3 (citing Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 900 (10th Cir. 2005)).

Legacy Medical contends that the Legacy Medical Complaint alleges sufficient facts to state a claim and to survive the MTD.  See Response at 4.  Legacy Medical notes the following facts from the Legacy Medical Complaint to support its breach-of-contract claim:

- Atwood and Insurance Co., each and all of them, represented and contracted with Legacy for coverage knowing full well that Legacy was in the medical profession field of service and provided medical services for people and/or patients when they made recommendations, quotes and proposals for coverage.

- Atwood and Insurance Co. represented and contracted with Legacy for coverage for medical malpractice coverage which Legacy understood it was obtaining.

- A claim and a lawsuit was filed entitled Kyla Davis, et al v Legacy Medical Services, et al bearing cause no. D-101-Cv-2019-01263, (hereinafter referred to as "Davis, et al") for medical malpractice asserting claims including claims for negligence and a request for coverage and the defense was made by Legacy to Insurance Co.

- Atwood and Insurance Co. have denied coverage forcing Legacy to hire independent counsel to defend it in the lawsuit.

- Atwood and Insurance Co. breached the contract with Legacy by failing to pay the covered loss at the level represented and agreed to.

Response at 4 (citing Legacy Medical Complaint ¶¶ 11-15, at 10).  According to Legacy Medical, because Western Agricultural "spends a majority of the *Motion to Dismiss* arguing that it has not [sic] duty to defend Legacy in <u>Davis, et al</u>," Western Agricultural implicitly "acknowledges that the policy at issue contains a duty to defend clause and that it is the center of Legacy's counterclaim."  Response at 4.

Legacy Medical argues that the cases that Western Agricultural cites in the MTD are distinguishable from the present dispute, because, in the cited cases, "there was no claim or allegation that the insurer or its agent led the insured to believe that it was covered for the type of claim asserted against it."  Response at 4.  Legacy Medical asserts that Western Agricultural and Atwood were aware of Legacy Medical's insurance needs, and that, based on Legacy Medical's discussions with Atwood, Legacy Medical "believed that it had procured medical malpractice insurance."  Response at 5.  Legacy Medical avers that, in <u>Millers Casualty Insurance Co. of Texas.</u> <u>v. Flores</u>, 1994-NMSC-058, 876 P.2d 227, the Supreme Court of New Mexico held that a physician's insurance policy did not cover injuries "caused by the performance of 'professional

services.'"  Response at 5 (quoting Millers Cas. Ins. Co. of Tex. v. Flores, 1994-NMSC-058, ¶ 10, 876 P.2d at 230).  Legacy Medical notes, however, that the "case was decided at the summary judgment stage and not the motion to dismiss stage" and that "there was no allegation in that case that the doctor believed he had obtained coverage for medical malpractice."  Response at 5. Legacy Medical argues that Guaranty National Insurance Co. v. C de Baca is inapposite, because there the Court of Appeals of New Mexico held that an insured's insurance coverage did not cover the insured's car accident, because the insurance coverage "had lapsed prior to the date of the car accident and was not reinstated until two days after the accident."  Response at 5 (citing Guar. Nat'l Ins. Co. v. C de Baca, 1995-NMCA-130, ¶¶ 13-15, 907 P.2d at 214-15).   Legacy Medical says that the holding in Bernalillo County Sheriffs Association v. County of Bernalillo is similar, because there the Supreme Court of New Mexico "found that an insurer did not have duty to defend where the acts allegedly covered were committed after expiration of policy."  Response at 5 (citing Bernalillo Cty. Sheriffs Ass'n v. Cty. of Bernalillo, 1992-NMSC-065, ¶ 4, 845 P.2d at 791). Legacy Medical argues that here, in contrast, "there is no question of whether the policy was in effect" and that Western Agricultural and Atwood misrepresented the terms and conditions of Legacy Medical's Insurance Policy.  Response at 5-6.

Next, Legacy Medical argues that the Legacy Medical Complaint states sufficient factual allegations to supports its claim against Western Agricultural and Atwood for violating the Unfair Practices Act.  See Response at 6.  Legacy Medical says that there are four elements that a claimant must allege to state a claim under the Unfair Practices Act:

> "(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or

mislead any person."

Response at 6 (quoting Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 5, 166 P.3d 1091, 1093).  Legacy Medical says that Atwood misrepresented the terms and conditions of Legacy Medical's Insurance Policy, and that, in Ellingwood v. N.N. Investors Life Insurance Co., Inc., 1991-NMSC-006, 805 P.2d 70, the Supreme Court of New Mexico "held that an insurance policy 'is the product of the representations of the agent that reasonably have been relied upon and accepted by the applicant.'"  Response at 6 (quoting Ellingwood v. N.N. Investors Life Ins. Co., Inc., 1991-NMSC-006, ¶ 17, 805 P.2d at 76).  Legacy Medical argues that, whether an insurance agent has the authority to grant immediate coverage through his or her representations to a buyer is a factual question, and, thus, Legacy Medical's "allegations are sufficient to survive" the MTD. Response at 6.

Legacy Medical also argues that the Legacy Medical Complaint states sufficient factual allegations to supports its claim against Western Agricultural and Atwood for violating the Unfair Insurance Practices Act.  See Response at 6.  Legacy Medical alleges that Legacy Medical contacted Atwood for advice about appropriate coverage for Legacy Medical's business needs, that Western Agricultural and Atwood made misrepresentations about the terms and conditions of Legacy Medical's Insurance Policy, and that Legacy Medical "relied upon the professional advice and recommendations of Atwood and the insurance quotes and proposals for coverage provided to them in determining the insurance coverage to purchase." Response at 7.  It asserts that the Legacy Medical Complaint contains sufficient factual allegations to support its claim.  See Response at 7. Last, Legacy Medical requests that, if the Court determines that the Legacy Medical Complaint lacks sufficient factual allegations to support its claims, then the Court should permit Legacy Medical to amend its Counterclaims "and not dismiss them with prejudice at this stage in the

- 12 -

proceeding."  Response at 7.  Legacy Medical argues that, "[a]lthough the decision to grant leave to amend is within the discretion of the trial court, leave to amend should be freely given unless there is a justifying reason for the denial."  Response at 8 (citing Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962)).

 **3.**  **The Reply.**

 Western Agricultural replied to the Response on December 6, 2019.  See Reply in Support of Western Agricultural Insurance Company's Motion to Dismiss Counterclaims by Legacy Medical Services, LLC at 1, filed December 6, 2019 (Doc. 24)("Reply").  Western Agricultural notes that Legacy Medical agrees that whether Western Agricultural has a duty to defend Legacy Medical under the Insurance Policy "is a question of contract interpretation and is to be determined by the terms of the policy."  Reply at 1-2 (citing Response at 3).  Western Agricultural says that Legacy Medical does not allege that the Insurance Policy is ambiguous, and, thus, "the Court should enforce the terms of the applicable insurance policy and determine that Legacy Medical has not stated a claim for relief under a breach of contract theory."  Reply at 2.  Western Agricultural argues that the Court should dismiss Legacy Medical's breach-of-contract claim, because: (i) "the insurance contract issued to Legacy Medical unambiguously excludes from coverage bodily injury caused by medical treatment and services"; and (ii) "New Mexico courts apply and enforce such unambiguous professional services exclusions."  Reply at 2.

 Western Agricultural next reiterates that Legacy Medical does not state a claim for an Unfair Practices Act violation.  See Reply at 3.  Western Agricultural says that the Unfair Practices Act defines an "unfair or deceptive trade practice" as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of

goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

Reply at 3 (quoting N.M. Stat. Ann. § 57-12-2(D)).   Western Agricultural argues that Legacy Medical's allegations "closely track[] language from [the Unfair Practice Act's] unfair practices definitions without adding additional facts."  Reply at 3.  According to Western Agricultural, the Legacy Medical Complaint does not "allege specific *facts* relating to what allegedly unfair or misleading statements Western Agricultural or Atwood are claimed to have made in selling the subject insurance policy."  Reply at 3 (emphasis in original).  Western Agricultural contends that only the Legacy Medical Complaint's paragraphs three to seven contain any factual allegations, which Western Agricultural quotes in part:

> Atwood "held himself out as being knowledgeable in the insurance business as someone who was capable of completely handling all insurance matters for members of the general public, including Legacy"; Atwood "was intimately aware of all aspects of Legacy's business and activities and undertook to advise and provide insurance produce and services to fully cover all of the various activities and businesses"; "Atwood was contacted by Legacy for advice on necessary and appropriate coverage for the activities Legacy was engaged in"; "Atwood undertook and did make business recommendations for insurance coverage based upon available insurance products with [Western Agricultural] to Legacy and his knowledge of Legacy's business activities"; and "Legacy necessarily relied upon the professional advice and recommendations of Atwood and the insurance quotes and proposals for coverage provided to them in determining the insurance coverage to purchase."

Reply at 3-4 (quoting Legacy Medical Complaint ¶¶ 3-7, at 3-4)(alteration in Reply and not in Legacy Medical Complaint).

Western Agricultural asserts that these factual allegations are "insufficient 'to state a claim to relief that is plausible on its face' as to a[n] [Unfair Practices Act] violation."  Reply at 4 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  According to Western Agricultural, Legacy Medical does not allege that Western Agricultural or Atwood ever told Legacy Medical that its

Insurance Policy would cover medical malpractice claims.  See Reply at 4.  Western Agricultural thus argues that, because the Legacy Medical Complaint "simply parrots the language of the [Unfair Practice Act] and otherwise lacks any factual allegations regarding any specific statement or representation purportedly made by Western Agricultural beyond the statements contained in the Insurance Policy, the Court should dismiss the [Unfair Practices Act] claim."  Reply at 4.

Last, Western Agricultural argues that Legacy Medical fails to state a claim for an Unfair Insurance Practices Act violation.  See Reply at 4.  Western Agricultural says that Legacy Medical does not identify which of the Unfair Insurance Practices Act's twenty-two prohibited activities Western Agricultural purportedly violated.  See Reply at 5-6 (citing N.M. Stat. Ann. §§ 59A-16-4 and 59A-16-20).  According to Western Agricultural, "it is impossible to perceive which [of the Unfair Insurance Practices Act's] subsection(s) could have been violated under the facts alleged in the [Legacy Medical Complaint]."  Reply at 6.  Western Agricultural notes that Legacy Medical alleges that Western Agricultural and Atwood made misrepresentations about the terms and conditions of Legacy Medical's Insurance Policy, "which would seem to correspond to § 59A-16-4(A),"[2] but Western Agricultural argues that Legacy Medical does not allege a specific misrepresentation that Western Agricultural or Atwood made about the Insurance Policy.  Reply at 6.  Western Agricultural concludes by arguing that the Legacy Medical Complaint is "completely devoid of facts regarding the alleged misrepresentation(s) by Western Agricultural and, therefore, should be dismissed."  Reply at 6.

___

[2]Section 59A-16-4(A) states: "No person shall make, publish, issue or circulate any estimate, illustration, circular, statement, sales presentation or comparison which . . . misrepresents the benefits, advantages, conditions or terms of any policy."  N.M. Stat. Ann. § 59A-16-4(A).

4.     **The December 18, 2019, Hearing**.

The Court held a hearing on December 18, 2019.  See Draft Transcript of Hearing at 1 (held December 18, 2019)("Tr.").[3]  Western Agricultural said that the underlying matter in Davis v. Legacy Medical Services, LLC, D-101-CV-201901263, is "strictly in medical negligence."  Tr. at 4:18-19 (Noya).  Western Agricultural explained that the plaintiff in the underlying matter alleges that Legacy Medical "failed to provide appropriate postpartum care and [the plaintiff] subsequently developed cardiomyopathy and is on a transplant list."  Tr. at 4:22-24 (Noya). Western Agricultural argued that the Insurance Policy that it issued to Legacy Medical is a "commercial policy" that contains a "professional services exclusion," under which Western Agricultural denied Legacy Medical's claim for defense or indemnification.  Tr. at 5:3-4 (Noya). Western Agricultural said that, after it denied Legacy Medical's claim, it "initiated this declaratory judgment action."  Tr. at 5:5 (Noya).

Western Agricultural said that the Insurance Policy that it issued to Legacy Medical is a "basic business policy" intended to cover things such as slip and falls and property damage.  Tr. at 5:13 (Noya).  Western Agricultural added that the Insurance Policy "has both property coverage and it does have some liability coverage.  And it also has some auto coverage" for non-owned vehicles.  Tr. at 5:10-12 (Noya).  Western Agricultural emphasized that the Insurance Policy "is not a professional liability policy."  Tr. at 5:16-17 (Noya).  Western Agricultural said that it does not provide professional liability coverage and that Legacy Medical has a policy for professional liability insurance with a different company, but Western Agricultural added that these two facts are not currently in the record.  See Tr. at 5:21-6:4 (Noya).

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

The Court asked Western Agricultural why it decided to seek a declaratory judgment after it denied Legacy Medical's claim.  <u>See</u> Tr. at 6:11-13 (Court).  Western Agricultural responded that the Court of Appeals of New Mexico's opinion in <u>Dove v. State Farm Fire and Casualty Company</u>, 2017-NMCA-051, 399 P.3d 400, contains "some loose language . . . suggesting that when an insurance carrier is going to deny a claim they need to initiate [a declaratory] judgment action."  Tr. at 6:19-22 (Noya).  Western Agricultural also said that, after it denied coverage to Legacy Medical, one of Legacy Medical's lawyers "provided a copy of the Dove case and said basically that we have to defend."  Tr. at 7:14-15 (Noya).  Western Agricultural averred that the Insurance Policy it provided Legacy Medical "is clear on the face" and contains a professional liability exception.  Tr. at 7:17 (Noya).  Western Agricultural argued that the underlying action contains "nothing that remotely is outside the arena of professional services," and, thus, the Insurance Policy does not require Western Agricultural to defend or indemnify Legacy Medical. Tr. at 8:5-6 (Noya).

Western Agricultural argued that Legacy Medical's counterclaims against it are "bare recitals of the elements of the cause of [] action."  Tr. at 8:10-11 (Noya).  Western Agricultural said that Legacy Medical alleges "that Atwood was an insurance agent and that he held himself out to be knowledgeable and he was aware of the aspects of their business and made recommendations and they relied on the recommendation[s]."  Tr. at 8:16-18 (Noya).  Western Agricultural asserted that Legacy Medical's allegations are "insufficient as a matter of law to move the claim from conceivable to plausible and should be dismissed."  Tr. at 8:12-14 (Noya).  Western Agricultural argued that the Insurance Policy is not ambiguous and that, under New Mexico law, "insurance contracts are construed like other contracts, and here, the Court in construing [the] policy in accordance with New Mexico law must attempt to put itself in the shoes of a hypothetical

every man insured and the language at issue should be used or viewed from that standpoint."  Tr. at 9:22-10:2 (Noya).  Western Agricultural added that an Insurance Policy's exclusions should be enforced "as long as their meaning is clear and they don't conflict with any statutory law."  Tr. at 10:5-7 (Noya).  Western Agricultural argued that the Insurance Policy's professional services exclusion is clear and that it is similar to an exclusion that the Supreme Court of New Mexico upheld in Millers Casualty Insurance Co. of Texas. v. Flores.  See Tr. at 10:8-11:5 (Noya).  Western Agricultural noted that Legacy Medical maintains that it had a "reasonable expectation[]" that the Insurance Policy would cover medical negligence, but Western Agricultural asserted that reasonable expectations are not relevant to contract interpretation where the contract "is clear and unambiguous as it is in this case."  Tr. at 11:10-11 (Noya).

Next, Western Agricultural argued that Legacy Medical fails to state a claim under the Unfair Practices Act.  See Tr. at 11:14-17 (Noya).  Western Agricultural noted that the Unfair Practices Act "has 4 elements they have to complain that the party made an oral or written statement, visual description or other representation that was false or misleading."  Tr. at 12:16-19 (Noya).  Western Agricultural asserted that Legacy Medical's claim "parrots" the Unfair Practices Act's language and that the Legacy Medical Complaint contains "no allegations that Mr. Atwood or Western made any actual statement that was false or misleading."  Tr. at 12:21-23 (Noya).  Western Agricultural argued that Legacy Medical has not shown that Western Agricultural or Atwood knowingly made a false or misleading statement in connection with selling the Insurance Policy.  See Tr. at 12:23-13:4 (Noya).  Last, Western Agricultural argued that Legacy Medical fails to state a claim under the Unfair Insurance Practices Act.  See Tr. at 13:10-12 (Noya).  Western Agricultural noted that Legacy Medical's claim contains only two allegations and incorporates all the facts that Legacy Medical alleges in its other claims.  See Tr. at 13:12-16

- 18 -

(Noya).  Western Agricultural argued that the claim lacks sufficient factual allegations and that the Court should dismiss the claim.  See Tr. at 13:16-20 (Noya).

Legacy Medical noted that Western Agricultural initiated this action, and thus Legacy Medical filed counterclaims against Western Agricultural, which are the claims at issue in Western Agricultural's MTD.  See Tr. at 14:2-4 (Shanor).  Legacy Medical said that counterclaims "are typically stated a lot more succinctly" than claims in a complaint.  Tr. at 14:6-7 (Shanor).  Legacy Medical said that Western Agricultural filed the MTD "before there has been any discovery" and "before there has been any exchange of documents."  Tr. at 14:13-15 (Shanor).  Legacy Medical argued that what is "ostensibly being argued here is a motion for summary judgment because you're getting into issues [beyond the four] corners of the policy, what the policy says, whether it's unambiguous, [and] whether parol evidence gets in . . . ."  Tr. at 14:16-20 (Shanor).  Legacy Medical stated that Western Agricultural and Atwood

> represented and contracted with Legacy for coverage for medical malpractice.  This agent did all the writing of insurance for Legacy.  Not just for Legacy Medical Services, but there is a Legacy Oil Company.  And this agent did all the writing for all their insurance, for all their businesses.  This agent knew that they were doing medical services.  They knew the type of business that was being, that was involved.

Tr. at 15:7-15 (Shanor).  The Court asked Legacy Medical whether its allegations relate more to its Third-Party Complaint against Atwood than to its Counterclaims against Western Agricultural.  See Tr. at 15:18-19 (Court).  Legacy Medical responded that its allegations relate "to both because [Atwood is] not doing this out in a vacuum."  Tr. at 15:20-21 (Shanor).  Legacy Medical argued that Western Agricultural has breached its contract with Legacy Medical and that it is "premature to make any determinations . . . whether this contract is ambiguous."  Tr. at 15:25-16:2 (Shanor).  Legacy Medical argued that, under rule 12(b)(6), "all facts are construed as well pled in favor of the nonmoving parties and all inferences that can be derived from that."  Tr. at 16:10-12 (Shanor).

Legacy Medical summarized its arguments as alleging that Atwood is Western Agricultural's agent and, as an agent, he misrepresented to Legacy Medical that its Insurance Policy includes medical malpractice coverage and that Legacy Medical relied upon this assurance.  See Tr. at 16:12-22 (Shanor).  Legacy Medical said that the "primary claim is against" Atwood, and Legacy Medical argued that Atwood "isn't working independent" of Western Agricultural, but, rather, "working with" Western Agricultural.  Tr. at 16:24-25 (Shanor).  Legacy Medical added that, under rule 8, the "pleading party does not have to plead the facts that specifically."  Tr. at 17:7-8 (Shanor).

The Court asked Legacy Medical whether, by "bringing in Mr. Atwood and saying he didn't get you the policy that he knew he should," Legacy Medical is "basically agreeing with Western Agriculture the policy you got doesn't cover medical malpractice claims."  Tr. at 17:13-15 (Court).  Legacy Medical said that the Legacy Medical Complaint contains alternative pleadings either that the Insurance Policy covers medical malpractice or that the Insurance Policy does not cover medical malpractice, but Atwood misrepresented that it covers medical malpractice.  See Tr. at 17:16-21 (Shanor).  Legacy Medical says that, in its Response, it cites a case in which an insurance agent misrepresented that a policy would start immediately, and the New Mexico court held that the agent's "representation could modify the terms of the policy even though the policy provided that it didn't start exactly at that time."  Tr. at 18:3-5 (Shanor).  The Court said Western Agricultural may not be entitled to a complete dismissal of the Counterclaims against it, but the Court asked Legacy Medical whether Western Agricultural is "at least entitled to a dismissal of the . . . counterclaims that relate to whether this policy covers what is in the [underlying state] malpractice suit."  Tr. at 18:9-12 (Court).  Legacy Medical responded that Western Agricultural is not entitled to dismissal of any Counterclaims against it at this stage of the

litigation.  See Tr. at 18:13-14 (Shanor).  Legacy Medical argued that, to show that the Insurance Policy covers medical malpractice, the Court first must determine that the Insurance Policy is unambiguous.  See Tr. at 18:17-19 (Shanor).  According to Legacy Medical, the Court cannot "make a determination of whether it's unambiguous until you get into a little bit of discovery on this."  Tr. at 18:20-22 (Shanor).  The Court said that, in federal court, parties cannot "file a claim and then say, well, let me look at discovery."  Tr. at 18:25-19:1 (Court).  The Court asked Legacy Medical whether it has "anything that would say that this policy is ambiguous."  Tr. at 19:2-3 (Court).  Legacy Medical said that its only basis for arguing that the Insurance Policy is ambiguous is its allegation that Atwood misrepresented to Legacy Medical that its Insurance Policy would cover medical malpractice.  See Tr. at 19:4-8 (Shanor).

Legacy Medical argued that the Court should deny the MTD, and it conceded that Western Agricultural and Atwood may be entitled to summary judgment once the parties have conducted some discovery.  See Tr. at 19:9-17 (Shanor).  Legacy Medical says that it believes its Counterclaims are well-founded, but it said that it has not had the opportunity yet to conduct interrogatories or to submit requests for reproduction.  See Tr. at 20:20-21:1 (Shanor).  Legacy Medical said that it alleges enough to survive the MTD.  See Tr. at 21:1-6 (Shanor).  Legacy Medical said that they "may get into discovery and find that [its] claim doesn't fly."  Tr. at 21:12-13 (Shanor).  Legacy Medical noted that it was brought into the case by Western Agricultural's request for declaratory judgment, and, thus, Legacy Medical filed its Counterclaims, because "they're compulsory counterclaims."  Tr. at 20:18-19 (Shanor).  Legacy Medical said that it states a valid claim under the Unfair Practices Act if the Court "construe[s] all the facts pled in our favor and construe[s] the facts that Atwood as an agent for Western Ag[ricultural] represented that this has medical malpractice coverage it provides medical malpractice coverage, and then subsequently

when they get sued it's denied." Tr. at 21:1-4 (Shanor).  Legacy Medical also asserted that it states a valid claim under the Unfair Insurance Practices Act.  See Tr. at 21:13-23 (Shanor).  Legacy Medical noted that Western Agricultural's counsel indicated that Legacy Medical had obtained medical malpractice coverage from a different insurance provider, but Legacy Medical argued that Western Agricultural's Insurance Policy "was the policy they were relying upon."  Tr. at 22:11-12 (Shanor).

The Court asked Legacy Medical to articulate its best argument that the Western Agricultural Insurance Policy covers medical malpractices.  See Tr. at 22:14-16 (Court).  Legacy Medical responded that it relied upon Atwood's representations that the Insurance Policy covers medical malpractice and that those representations affected Legacy Medical's expectations.  See Tr. at 22:17-25 (Shanor).  Legacy Medical further argued that Western Agricultural's request for declaratory judgment and Legacy Medical's Counterclaims and Third-Party Complaint will entail the same discovery, and, thus, "from a practical standpoint there is no prejudice to the plaintiff in this case to let these claims at least advance into discovery because they're not going to require any further discovery."  Tr. at 23:22-25 (Shanor).  Legacy Medical asserted that it would be prejudiced if the Court dismissed the case before the parties conducted any discovery and thus asked the Court to deny the MTD and allow the case to proceed.  See Tr. at 23:25-24:8 (Shanor).

Western Agricultural argued that its MTD is directed at Legacy Medical's contractual and extracontractual Counterclaims.  See Tr. at 24:25-25:3 (Noya).  The Court said that Legacy Medical's Counterclaim that Atwood said the Insurance Policy covers medical malpractice is a different issue than whether the Insurance Policy covers medical malpractice by its terms.  See Tr. at 25:5-8 (Court).  Western Agricultural responded that "[i]n the allegations nowhere do they say Atwood told us that this Western Ag policy would cover professional liability claims."  Tr.

at 25:10-12 (Noya).  Western Agricultural contended that the Legacy Medical Complaint alleges that Atwood knew that Legacy Medical is in the medical business when it issued the Western Agricultural Insurance Policy.  See Tr. at 25:14-15 (Noya).  According to Western Agricultural, "nowhere in the complaint [does Legacy Medical] allege that Atwood was told this was the only policy that they wanted to purchase; that they told Atwood that they were counting on him to make sure their business had coverage for every type of calamity."  Tr. at 25:17-21 (Noya).  Western Agricultural further argued that the Legacy Medical Complaint lacks any specific representations by Atwood that are false or misleading.  See Tr. at 25:24-26:2 (Noya).  Western Agricultural argued that, if Legacy Medical told "Atwood that they wanted him to secure all types of insurance that a medical services business would need, that's a whole different case than what we have here. They don't allege that anywhere in their complaint."  Tr. at 26:9-13 (Noya).  Western Agricultural said that Legacy Medical has not alleged sufficient facts to state a claim for breach of contract or for violations of the Unfair Practices Act and the Unfair Insurance Practices Act.  See Tr. at 26:24-27:3 (Noya).  Western Agricultural argued that the Court should dismiss all of Legacy Medical's Counterclaims and not permit Legacy Medical to amend the Legacy Medical Complaint, because Legacy Medical has not filed a motion under rule 15 of the Federal Rules of Civil Procedure with a proposed amended complaint.  See Tr. at 27:11-17 (Noya).

The Court said that it might dismiss the Counterclaims which allege that the Insurance Policy covers medical malpractice, but that Legacy Medical has indicated that it could allege some facts that are not in the Legacy Medical Complaint about Atwood's alleged misrepresentations, and, thus, the Court might dismiss those Counterclaims without prejudice to filing a motion to amend.  See Tr. at 27:18-28:2 (Court).  The Court asked Western Agricultural for its view on such a "bifurcated ruling."  Tr. at 28:2-3 (Court).  Western Agricultural said that, if Legacy Medical

"swear[s] out that they went to Mr. Atwood and told him they wanted a medical professional coverage policy, and that this policy that Mr. Atwood obtained . . . provided that coverage," filing a motion to amend would be appropriate.  Tr. at 28:5-9 (Noya).  The Court said that Legacy Medical does not "need to swear it out" but that, if Legacy Medical files a motion to amend with proposed Counterclaims, then "there may be something there."  Tr. at 28:15-19 (Court).  Western Agricultural stated that it would have to look at the proposed pleading to determine its position. See Tr. at 28:20-29:3 (Noya).  Western Agricultural confirmed that it has not filed an answer to the Legacy Medical Complaint and that the MTD is all it has filed.  See Tr. at 29:4-7 (Court, Noya). In closing, Western Agricultural's counsel said that, although she indicated earlier that it does not think Western Agricultural offers professional liability coverage, she does not "know that with 100% certainty."  Tr. at 29:13 (Noya).  The Court noted that Legacy Medical said it does not have a professional malpractice policy from another insurance provider, but the Court stated its belief that Legacy Medical has such a policy.  See Tr. at 29:17-20 (Court).  Western Agricultural agreed with the Court's statement and speculated that what "happened is that they purchased the policy that names the actual providers and whoever handled it failed to endorse the business to the policy. And that's why we're here where we are today.  But it wasn't a policy with us."  Tr. at 29:23-30:3 (Noya).

The Court said that it is inclined to grant the MTD.  See Tr. at 30:6-7 (Court).  The Court said that "[i]t seems to me there is not a great deal of dispute right at the moment about whether the policy covers the state law malpractice claims, but given that Mr. Shanor thinks he can make some allegations that may survive a motion to dismiss, I'm inclined to let him amend."  Tr. at 30:7-12 (Court).  Western Agricultural requested that the Court vacate the scheduling conference set for January 2, 2020, and reschedule the scheduling conference for a date after Legacy Medical has

filed its amended Counterclaims.  <u>See</u> Tr. at 31:2-10 (Noya).  Legacy Medical said that it does not

oppose vacating the scheduling conference.  <u>See</u> Tr. at 31:21-23 (Shanor).  The Court said it would

vacate the January 2, 2020, scheduling conference and reset it for another date.  <u>See</u> Tr. at 32:5-

33:4 (Court).  Legacy Medical said that it would like to conduct some discovery before filing a

motion to amend and proposed Counterclaims, <u>see</u> Tr. at 33:6-19, but the Court said that "that's

just not the way we do it in federal court," Tr. at 33:20-21 (Court).  The Court said that it would

issue an opinion for the parties as soon as possible.  <u>See</u> Tr. at 33:24-34:3 (Court).

## <u>LAW REGARDING RULE 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests

the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994).  The complaint's

sufficiency is a question of law, and when considering a rule 12(b)(6) motion, a court must accept

as true all well-pled factual allegations in the complaint, view those allegations in the light most

favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u>

<u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable

person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant

prevail on a motion to dismiss.");  <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir.

2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded

factual allegations in a complaint and view these allegations in the light most favorable to the

plaintiff.")(citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.

Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued

on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions.  First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss.  See Robbins v. Oklahoma, 519 F.3d at 1247; Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)).  Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the complaint's face.  See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The limitations defense is the affirmative defense that the complaint's uncontroverted facts is most likely to establish.  See 5 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute.  The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may merely be argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  It appears that, from caselaw in several Courts of Appeals,

the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006).  Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice.  See Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING COUNTERCLAIMS

Subject to restrictions that the Federal Rules of Civil Procedure and the limits of federal court jurisdiction impose, a defendant may bring a counterclaim in a pending action and assert any and all claims that he or she has against the plaintiff.  See Fed. R. Civ. P. 13.  Under rule 13, counterclaims are categorized as either being "compulsory" or "permissive."  Fed. R. Civ. P. 13(a), (b).  A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  See Arch Mineral Corp. v. Lujan, 911 F. 2d 408, 412 (10th Cir. 1990).  A compulsory counterclaim, as distinguished from a permissive counterclaim, must be pled or is barred.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1053 (10th Cir. 1988).

"By and large, the courts have refrained from making any serious attempt to define the transaction-or-occurrence concept in a highly explicit fashion."  6 Charles Wright et al., Federal Practice & Procedure: Civil § 1410, at 52 (3d ed. 2010).  "Most courts, rather than attempting to define the key terms of Rule 13(a) precisely, have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims can be determined."  6 Wright, supra § 1410, at 52.  The Tenth Circuit has taken this approach, stating that a counterclaim is compulsory

if: (i) it involves the same issues of law and fact as the principal claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same claim; (iii) it involves the same evidence as the principal claim; and (iv) there is a logical relationship between the principal claim and the counterclaim.  See FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994).

In recognition of the principles of judicial economy that support rule 13, a number of courts, including the Tenth Circuit, give special weight to the "same evidence" and "claim preclusion" factors.  Jones v. Ford Motor Credit Co., 358 F.3d 205, 209-10 (2d Cir. 2004)(classifying counterclaim as permissive because the essential facts needed to prove the principal claim and the counterclaim were not so similar that combining the lawsuits would yield judicial efficiency); FDIC v. Hulsey, 22 F.3d at 1487 (finding counterclaims compulsory because res judicata would bar the defendant from bringing a subsequent claim arising out of the same creditor/debtor relationship and any evidence presented would necessarily encompass the parties' entire relationship); Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 448 (7th Cir. 1994)(describing the United States Court of Appeals for the Seventh Circuit's test whether a counterclaim is compulsory as asking "little more than whether the plaintiff's claims would be barred by res judicata"); Painter v. Harvey, 863 F.2d 329, 332 (4th Cir. 1988)("Where, as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory.").

## NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION

In contract cases, "the role of the court is to give effect to the intention of the contracting parties."  Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 21, 925 P.2d 1184, 1190.  "The primary objective in construing a contract is not to label it with specific definitions or to look at form above substance, but to ascertain and enforce the intent of the parties as shown by the contents of the

instrument." Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 21, 925 P.2d at 1190 (citing Shaeffer v. Kelton, 1980-NMSC-117, ¶ 8, 619 P.2d 1226, 1229).  "The parole evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing.'" Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc., 2000-NMSC-030, ¶ 16, 12 P.3d 431, 437 (quoting C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 12, 817 P.2d 238, 242).  If a contract is ambiguous, however, "evidence will be admitted to aid in interpreting the parties' expressions." C.R. Anthony Co. v. Loretto Mall Partners, 1991 NMSC-070, ¶ 12, 817 P.2d at 242. "On the other hand, if the court determines that the contract is clear and unambiguous on its face, evidence of the circumstances surrounding the transaction is inadmissible to vary or modify its terms." C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 12, 817 P.2d at 242 (emphasis in original)(citation omitted).

The question whether an agreement contains an ambiguity is a matter of law.  See Mark V., Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d 1232, 1235 (citing Levenson v. Mobley, 1987-NMSC-102, ¶ 7, 744 P.2d 174, 176).  "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d 1235 (citation omitted).  If, however, the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235.  On the other hand, when the court concludes that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citing Vickers v. N. Am. Land Dev., Inc., 1980-NMSC-021, ¶ 9, 607 P.2d 603, 606).  New Mexico courts may consider extrinsic evidence to determine "whether the meaning of a term or expression contained in the agreement is actually unclear." Mark V. Inc. v. Mellekas, 1993-NMSC-001, ¶ 12,

845 P.2d at 1235.  See id. ("New Mexico law, then, allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity."); C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 15, 817 P.2d at 242-43 ("We hold today that in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." (citation and footnote omitted)).  Once the court concludes that an ambiguity exists, the resolution of that ambiguity becomes a question of fact.  See Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 845 P.2d at 1235.  To decide an ambiguous term's meaning, "the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 845 P.2d at 1236.  New Mexico contract law "requires the construction of ambiguities and uncertainties in a contract most strongly against the party who drafted the contract." Schultz & Lindsay Constr. Co., 1972-NMSC-013, ¶ 6, 494 P.2d 612, 614.  See Rummel v. Lexington Ins., 1997-NMSC-041, ¶ 22, 945 P.2d 970, 977 ("An ambiguity in an insurance contract is usually construed against the insurer, because courts will weigh their interpretation against the party that drafted a contract's language.").

## NEW MEXICO LAW REGARDING INSURANCE CONTRACT INTERPRETATION

Under New Mexico Law, "insurance contracts are construed by the same principles which govern the interpretation of all contracts." Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 18, 945 P.2d 970, 976 (quotation marks omitted).  In interpreting insurance policies, courts must consider the policy as a whole. See Weldon v. Commercial Union Assur. Co., 1985-NMSC-118, ¶ 9, 710 P.2d 89, 91.  "The clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." Safeco Ins. Co. of Am.,

Inc. v. McKenna, 1977-NMSC-053, ¶ 18, 565 P.2d 1033, 1037.  "If any provisions appear questionable or ambiguous, we will first look to whether their meaning and intent is explained by other parts of the policy."  Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 20, 945 P.2d at 977. When insurance contracts are unambiguous, courts must construe them "in their usual and ordinary sense,"  Slack v. Robinson, 2003-NMSC-083, ¶ 7, 71 P.3d 514, 517, and "enforce [them] as written,"  Truck Ins. Exch. v. Gagnon, 2001-NMCA-092, ¶ 7, 33 P.3d 901, 903.

When interpreting contracts, "courts should not 'create ambiguity where none exists.'" United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d at 647 (quoting City of Santa Rosa v. Twin City Fire Ins. Co., 2006-NMCA-118, ¶ 7, 143 P.3d 196, 198).  Policy terms are only deemed ambiguous when they are "reasonably and fairly susceptible of different constructions."  Knowles v. United Servs. Auto Ass'n, 1992-NMSC-030, ¶ 9, 832 P.2d at 396. Ambiguous terms must be construed against the drafter; they are "given the strongest interpretation against the insurer which they will reasonably bear."  Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 22, 945 P.2d at 977.  See United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d at 648.

In construing an insurance policy, the distinction between an exclusion and a provision of coverage is very important, because it affects which party bears the burden of proof.  See Miller v. Monumental Life Ins. Co., 761 F. Supp. 2d at 1147.  The insured party initially bears the burden to show that coverage is established under a provision of coverage.  See Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 6, 127 P.3d 1111, 1113.  The insurer then bears the burden of proving the policy excludes coverage.  See Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 6, 127 P.3d at 1113 (citing Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance, § 1.10, at 43 (2d ed. 1996)("That the insurer has the burden of proof to prove no

coverage under an all-risks policy is the American rule in all states, with the possible exception of Texas")); <u>Lopez v. N.M. Pub. Schs. Ins. Auth.</u>, 1994-NMSC-017, ¶ 13, 870 P.2d 745, 749.

Insurance policy terms are frequently litigated, and courts have established consensus interpretations to many of the most common phrases.  For example, "'unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent insured.'"  <u>Axis Reinsurance Co. v. Bennett</u>, 2008 WL 2485388, at *15 (S.D.N.Y. June 19, 2008)(Lynch, J.)(quoting <u>Sales v. State Farm Fire & Cas. Co.</u>, 849 F.2d 1383, 1385 (11th Cir. 1988)).  <u>See also</u> <u>Stettin v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 861 F.3d 1335, 1337 (11th Cir. 2017).  Similarly, the Court of Appeals of New Mexico has defined "arising out of" broadly, stating that the term is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'"  <u>Krieger v. Wilson Corp.</u>, 2006-NMCA-034, ¶ 14, 131 P.3d 661, 666 (quoting <u>Baca v. N.M. State Highway Dep't</u>, 1971-NMCA-087, ¶ 14, 486 P.2d 625, 628).  In analyzing the term in an insurance contract exclusion, the Tenth Circuit surveyed New Mexico caselaw and concluded that "we have every reason to suppose that New Mexico law applies the same broad definition of arising out of in the exclusion context as in the coverage context."  <u>Am. Nat'l Prop. & Cas. Co. v. United Specialty Ins. Co.</u>, 592 F. App'x 730, 742 (10th Cir. 2014)(unpublished).[4]

---

[4]<u>American National Property & Casualty Co. v. United Specialty Insurance Co.</u> is an unpublished opinion, but the Court can rely on an unpublished opinion from the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored.  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

## NEW MEXICO LAW REGARDING BREACH-OF-CONTRACT CLAIMS

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent.  See N.M. R. Ann., Civ. UJI 13-801.  A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.  See N.M. R. Ann., Civ. UJI 13-822.  Incomplete performance is a breach of contract.  See Cochrell v. Hiatt, 1981-NMCA-125, ¶ 6, 638 P.2d 1101, 1103-04 (holding that, where the contract called for the roof to be restored to a "healthy" state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year period, the defendant's performance was incomplete, and the defendant was in breach of the contract).  Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338.

Applying these principles in Armijo v. New Mexico Department of Transportation, No. CIV. 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.), the Court concluded that a plaintiff's allegations failed to state a claim for breach of contract.  In support of

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that American National Property & Casualty Co. v. United Specialty Insurance Co. has persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause." 2009 WL 1329192, at *7. The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached" and did not say "to what his employment contract entitles him or of what the Department deprived him." 2009 WL 1329192, at *7. The Court found that there was "not enough . . . to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract." 2009 WL 1329192, at *8.

On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff. See Archuleta v. City of Roswell, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at *16-17 (D.N.M. Sept. 30, 2012)(Browning, J.). "Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract." Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0040 JB/LFG, 2013 WL 3456913, at *42 (June 28, 2013)(Browning, J.). The Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, 784 P.2d 991: "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights." 1989-NMSC-081, ¶ 23, 784 P.2d at 998. Punitive damages are not available when they are "predicated solely on gross negligence. In addition to, or in lieu of, such negligence there must be

evidence of an evil motive or a culpable mental state." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 25, 880 P.2d 300, 308 (internal quotation marks omitted).  The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted).  A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted).  The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (name of party making claim for punitive damages) should recover compensation for damages, and if you further find that the conduct of _____ (name of party whose conduct gives rise to a claim for punitive damages) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

N.M. R. Ann., Civ. UJI 13-861.

## NEW MEXICO LAW REGARDING AGENCY

In New Mexico, "[a]uthority is the power of the agent to affect the legal relations," including liability "of the principal by acts done in accordance with the principal's manifestations of consent to [the agent]." Romero v. Mervyn's, 1989-NMSC-081, ¶ 11, 784 P.2d 992, 996 (quoting Restatement (Second) of Agency § 7 (1958)).  New Mexico courts recognize actual authority -- express and implied; apparent authority; and ratification.  See, e.g., Romero v. Mervyn's, 1989-NMSC-081, ¶ 12, 784 P.2d at 996 ("Besides being liable for acts within the actual authority of an agent, a principal also is responsible for the acts of the agent when the principal

has clothed the agent with the appearance of authority." (citing <u>Chevron Oil Co. v. Sutton</u>, 1973-NMSC-111, ¶ 7, 515 P.2d 1283, 1286); <u>Echols v. N. C. Ribble Co.</u>, 1973-NMCA-038, ¶¶ 18-19, 511 P.2d at 569 ("'An agent's scope of authority embraces not only his actual authority but also that apparently delegated.'" (quoting <u>Sw. Portland Cement v. Beavers</u>, 1970-NMSC-164, ¶ 11, 478 P.2d 54, 549)).  "[T]he manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called."  <u>Chevron Oil Co. v. Sutton</u>, 1973-NMSC-111, ¶ 4, 515 P.2d at 1285.

A principal may convey to an agent actual authority.  <u>See</u> <u>Comstock v. Mitchell</u>, 1990-NMSC-054, ¶ 14, 793 P.2d 261, 264.  Such authority encompasses express authority, which the principal indicates explicitly, and implied authority, which the principal manifests through words or actions, or which is assumed from the circumstances.  <u>See</u> <u>Comstock v. Mitchell</u>, 1990-NMSC-054, ¶ 14, 793 P.2d at 264 ("Actual authority is given to the agent by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent or from the circumstances of the relationship." (quoting <u>Restatement (Second) of Agency</u> § 7 cmt. c).

Apparent authority flows from the principal's manifestations to a third party.  <u>See</u> <u>Comstock v. Mitchell</u>, 1990-NMSC-054, ¶ 16, 793 P.2d at 264 (citing <u>Restatement (Second) of Agency</u> § 8 cmt. e,  § 27 cmt. a); <u>Vickers v. N. Am. Land Devs., Inc.</u>, 1980-NMSC-021, ¶¶ 5, 607 P.2d 603, 605 (citing <u>Douglass v. Mut. Ben. Health & Accident Ass'n</u>, 1937-NMSC-097, 76 P.2d 453).  Apparent authority exists where "the agent is placed in a position which would lead a reasonably prudent person to believe that the agent did indeed possess that apparent authority."  <u>Vickers v. N. Am. Land Devs., Inc.</u>, 1980-NMSC-021, ¶¶ 5, 607 P.2d at 605 (citing <u>Douglass v. Mut. Ben. Health & Accident Ass'n</u>, 1937-NMSC-097, 76 P.2d at 453).

"If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known."

Vickers v. N. Am. Land Devs., Inc., 1980-NMSC-021, ¶ 5, 607 P.2d at 605 (quoting Douglass v. Mutual Ben. Health & Accident Ass'n, 1937-NMSC-097, ¶ 6, 76 P.2d 453, 456).

Through ratification, a principal retroactively approves an action undertaken on the principal's behalf.   See Otero v. Wheeler, 1985-NMSC-058, ¶ 15, 701 P.2d 369, 373 ("'Ratification means to give validity to the act of another, and in legal phraseology usually means to approve or affirm by a principal what has been done by an agent.'" (quoting Guadalupe Cty. Bd. of Ed. v. O'Bannon, 1921-NMSC-008, ¶ 7, 195 P. 801, 803)).  To ratify an action, a principal must have knowledge of all material facts.  See Burguete v. G. W. Bond & Bro. Mercantile Co., 1938-NMSC-075, ¶¶ 27-28, P.2d 749, 754-55.  Cf. See-Tee Min. Corp. v. Nat'l Sales, Inc., 1966-NMSC-173, ¶ 5, 417 P.2d 810, 811 ("The fact of knowledge, like any other fact, may be found from either direct evidence or from the existence of other facts and circumstances from which the fact of actual knowledge properly may be inferred").  Ratification occurs where a reasonable person would believe that a principal manifested assent; for instance, acceptance of consideration for a sale may constitute ratification.  Cf. Jessen v. Nat'l Excess Ins., 1989-NMSC-040, ¶ 21, 776 P.2d 1244, 1249 ("Ratification may be implied by acquiescence in the results of an unauthorized act or by retention of the benefits of this act." (citing Morris Oil Co. v. Rainbow Oilfield Trucking, Inc., 1987-NMCA-104, ¶ 19, 741 P.2d 840, 844-45)); Grandi v. LeSage, 1965-NMSC-017, ¶ 26, 399 P.2d 285, 293 ("The defendant, having received the benefits of the sale by his acceptance and retention of the consideration, cannot now reject the burdens incident thereto."); Warren v. New York Life Ins., 1936-NMSC-031, ¶¶ 34-35, 58 P.2d 1175, 1181 (discussing that silence manifests

assent when a reasonable person would conclude that it does).

## NEW MEXICO LAW REGARDING THE NEW MEXICO UNFAIR PRACTICES ACT

"The [Unfair Practices Act] provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices."  Valdez v. Metro. Prop. & Cas. Ins. Co., No. 11-0507, 2012 WL 1132414, at *19 (D.N.M. Mar. 31, 2012)(Browning, J.)(citing Ouynh Truong v. Allstate Ins. Co., 2010-NMSC-009, ¶ 22, 227 P.3d 73, 80)).  "Generally speaking, the [Unfair Practices Act] is designed to provide a remedy against misleading identification and false or deceptive advertising."  Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 22, 166 P.3d at 1096.  To state a claim under the Unfair Practices Act, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 5, 166 P.3d at 1093 (citing N.M. Stat. Ann. § 57-12-12(D); Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d 1308, 1311)).  "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services."  Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 17, 965 P.2d 332, 338.

## NEW MEXICO LAW REGARDING THE UNFAIR INSURANCE PRACTICES ACT

The New Mexico Legislature passed the Unfair Insurance Practices Act "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices."  N.M. Stat. Ann. § 59A-16-2.  Section 59A-16-4 proscribes certain forms of misrepresentations that relate to

insurance transactions, including "misrepresent[ing] the benefits, advantages, conditions or terms of any policy." N.M. Stat. Ann. § 59A-16-4. Section 59A-16-5 forbids "untrue, deceptive or misleading" advertisements that relate to insurance. N.M. Stat. Ann. § 59A-16-5. Section 59A-16-8 makes actionable certain falsifications of insurance records and the circulation of "any false statement of the financial condition of an insurer." N.M. Stat. Ann. § 59A-16-8. Various provisions in the Unfair Insurance Practices Act proscribe discrimination in relation to insurance transactions. See, e.g., N.M. Stat. Ann. §§ 59A-16-11 to -13.2. Section 59A-16-19 prohibits anti-competitive insurance practices "resulting or tending to result in unreasonable restraint of, or monopoly in, the business of insurance." N.M. Stat. Ann. § 59A-16-19.

The Unfair Insurance Practices Act imposes liability for a laundry list of unfair insurance claims practices, including the following:

> A.    misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
>
> B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
>
> C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;
>
> D.    failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;
>
> E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;
>
> F.    failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;
>
> G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for

amounts reasonably similar to amounts ultimately recovered;

       H.     attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

       I.     attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

       J.     failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

       K.     making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

       L.     delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

       M.     failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

       N.     failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

       O.     violating a provision of the Domestic Abuse Insurance Protection Act.

N.M. Stat. Ann. § 59A-16-20.  Section 59A-16-30 provides a right of action for violations of the

Unfair Insurance Practices Act.  See N.M. Stat. Ann. § 59A-16-30.  The Unfair Insurance Practices

Act allows for attorney's fees to prevailing parties.  See N.M. Stat. Ann. § 59A-16-30.  The

Honorable Bruce D. Black, then-United States District Judge for the United States District Court

for the District of New Mexico, concluded that a plaintiff failed to plausibly plead an Unfair

Insurance Practices Act claim, because the plaintiff did not specify which provision of the Unfair

Insurance Practices Act the defendant allegedly violated:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices.  Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged. At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20.  Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits.  As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith.  Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d 1215, 1227 (D.N.M.

2001)(Black, J.)(footnote omitted)(citations omitted).  The Court previously has concluded that a

plaintiff failed to state a claim under rule 12(b)(6) when the complaint did not contain even "a

formulaic recitation of the elements of a cause of action" under the Unfair Insurance Practices Act.

Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486 JB/WDS, 2012 WL 1132332, at *7

(D.N.M. March 28, 2012)(Browning, J.)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## LAW REGARDING RELIANCE ON THE COURT OF APPEALS OF NEW MEXICO'S CASELAW

The Court considers Court of Appeals of New Mexico's opinions with the understanding

that, while the Court "certainly may and will consider the Court of Appeal[s'] decision in making

its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that

it would be bound by a Supreme Court decision."  Mosley v. Titus, 762 F. Supp. 2d 1298, 1332

(D.N.M. 2010)(Browning, J.)(alterations added)(noting that, where the only opinion on point is

"from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).

The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court. In the past, the Supreme Court directed federal courts, in the absence of controlling authority from the highest state court, to follow intermediate state court decisions:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in <u>West v. American Telephone and Telegraph Co.</u>, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law. . . . The question has practical aspects of great importance in the proper administration of justice in the federal courts. It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship. In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

<u>Fid. Union Trust Co. v. Field</u>, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).

"The Supreme Court has softened this position over the years." <u>Anderson Living Trust v.</u>

WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1243 (D.N.M. 2014)(Browning, J.).  Federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967)(citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20[2], at 124-75 (3d ed. 1999)("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).  See also Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1243; Mosley v. Titus, 762 F. Supp. 2d at 1332.

## ANALYSIS

The Court grants the MTD.  The Court dismisses with prejudice Legacy Medical's breach-of-contract claim under Legacy Medical's theory that the Insurance Policy covers medical malpractice claims, because, as a matter of law, the Insurance Policy unambiguously excludes coverage for medical malpractice claims under its professional services exclusion.  The Court dismisses without prejudice Legacy Medical's breach-of-contract claim under Legacy Medical's alternative theory that Western Agricultural and Atwood breached the Insurance Policy as modified by Atwood's misrepresentations, because Legacy Medical has not alleged sufficiently that Atwood has the authority to modify the Insurance Policy's terms or that Atwood misrepresented the Insurance Policy's terms.  The Court dismisses without prejudice Legacy Medical's claims that Western Agricultural and Atwood violated the Unfair Practices Act and the Unfair Insurance Practices Act, because Legacy Medical has pled only conclusory allegations that Atwood made false and misleading statements about the Insurance Policy in violation of New Mexico law, and because Legacy Medical does not identify the specific provisions of the Unfair

Practices Act and the Unfair Insurance Practices Act that Western Agricultural and Atwood allegedly violated.  At the December 18, 2019, hearing, Legacy Medical indicated that it can provide additional facts that it did not allege in the Legacy Medical Complaint and that would be, if alleged, sufficient "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). While the Court determines as a matter of law that the Insurance Policy unambiguously excludes medical malpractice claims, the Court will permit Legacy Medical to amend the Legacy Medical Complaint and allege sufficient facts supporting that Atwood had authority to modify the Insurance Policy's terms and that Atwood made specific misrepresentations that the Insurance Policy covers medical malpractice claims.  Thus, the Court grants the MTD, and the Court will permit Legacy Medical to file a motion to amend the Legacy Medical Complaint that states sufficient facts to state a claim and attach its proposed Counterclaims and Third-Party Complaint.

I.      **THE COURT DISMISSES WITH PREJUDICE LEGACY MEDICAL'S BREACH-OF-CONTRACT CLAIM UNDER LEGACY MEDICAL'S THEORY THAT THE INSURANCE POLICY COVERS MEDICAL MALPRACTICE CLAIMS, AND THE COURT DISMISSES WITHOUT PREJUDICE LEGACY MEDICAL'S BREACH-OF-CONTRACT CLAIM UNDER LEGACY MEDICAL'S ALTERNATIVE THEORY THAT WESTERN AGRICULTURAL AND ATWOOD BREACHED THE INSURANCE POLICY AS MODIFIED BY ATWOOD'S MISREPRESENTATIONS.**

Western Agricultural contends that the primary issue in Legacy Medical's breach-of-contract claim is "whether Legacy Medical is covered for medical malpractice claims despite the applicable insurance policy's specific exclusion of certain professional services, including '[m]edical, surgical, dental, X-ray or nursing services treatment, advice, or instruction' and '[a]ny health or therapeutic service treatment, advice, or instruction.'"  MTD at 1 (quoting Policy -- Part B § II(B)(1)(j)(4)-(5), at 3).  Western Agricultural notes that Legacy Medical agrees that whether Western Agricultural has a duty to defend Legacy Medical under the Insurance Policy

"is a question of contract interpretation and is to be determined by the terms of the policy."  Reply at 1-2 (citing Response at 3).  In addition, Western Agricultural says that Legacy Medical does not allege that the Insurance Policy is ambiguous, and, thus, "the Court should enforce the terms of the applicable insurance policy and determine that Legacy Medical has not stated a claim for relief under a breach of contract theory."  Reply at 2.  Western Agricultural asserts that it has no duty to defend Legacy Medical and that the Court can dismiss Legacy Medical's claims if the claims "fall outside the policy provisions and it can be concluded as a matter of law that there is no basis for indemnity."  MTD at 3 (citing State Farm & Cas. Co. v. Price, 1984-NMCA-036, ¶ 18, 684 P.2d at 528; Bernalillo Cty. Sheriffs Ass'n v. Cty. of Bernalillo, 1992-NMSC-065, ¶ 8, 845 P.2d at 792; Guar. Nat'l Ins. Co. v. C de Baca, 1995-NMCA-130, ¶ 14, 907 P.2d at 214).  Western Agricultural avers that Legacy Medical's breach-of-contract Counterclaim "fails to state a claim . . . because it does not point to any policy term that Western Agricultural is alleged to have breached."  MTD at 4.

Legacy Medical contends that it "is simply not true" that the Legacy Medical Complaint lacks factual allegations and that the Legacy Medical Complaint is "clear" that Western Agricultural "breached the [policy's] provision relating to its duty to provide a defense to Legacy under the circumstances and policy."  Response at 2.  Legacy Medical alleges that Western Agricultural and Atwood breached their contract with Legacy Medical by denying coverage to Legacy Medical and by not providing Legacy Medical's defense in Davis v. Legacy Medical Services, LLC, D-101-CV-201901263.  See Legacy Medical Complaint ¶¶ 10-17, at 9-10.  Legacy Medical said that its only basis for arguing that the Insurance Policy is ambiguous is its allegation that Atwood misrepresented to Legacy Medical that its Insurance Policy would cover medical malpractice.  See Tr. at 19:4-8 (Shanor).

At the December 18, 2019, hearing, the Court asked Legacy Medical whether, by "bringing in Mr. Atwood and saying he didn't get you the policy that he knew he should," Legacy Medical is "basically agreeing with Western Agriculture the policy you got doesn't cover medical malpractice claims." Tr. at 17:13-15 (Court). Legacy Medical said that the Legacy Medical Complaint contains alternative pleadings either that the Insurance Policy covers medical malpractice or that the Insurance Policy does not cover medical malpractice, but Atwood misrepresented that it covers medical malpractice. See Tr. at 17:16-21 (Shanor). Legacy Medical says that, in its Response, it cites a case in which an insurance agent misrepresented that a policy would start immediately, and the New Mexico court held that the agent's "representation could modify the terms of the policy even though the policy provided that it didn't start exactly at that time." Tr. at 18:3-5 (Shanor).

### A. THE COURT DISMISSES WITH PREJUDICE LEGACY MEDICAL'S BREACH-OF-CONTRACT CLAIM UNDER LEGACY MEDICAL'S THEORY THAT THE INSURANCE POLICY COVERS MEDICAL MALPRACTICE CLAIMS, BECAUSE THE INSURANCE POLICY UNAMBIGUOUSLY EXLCUDES SUCH CLAIMS.

The Court concludes that the Insurance Policy does not cover medical malpractice claims. The Insurance Policy's professional services exclusion states that the Insurance Policy does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisor, inspection or engineering services;

(4)     Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(5)     Any health or therapeutic service treatment, advice or instruction;

(6)     Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7)     Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8)     Body piercing services; and

(9)     Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

Policy -- Part B § II(B)(1)(j), at 3.  By the Insurance Policy's terms, coverage does not extend to claims arising out of medical, surgical, or health injuries caused by the insured's treatment, advice or instruction.  See Policy -- Part B § II(B)(1)(j)(4)-(5), at 3.  At the hearing, when the Court asked Legacy Medical to articulate its best argument that the Insurance Policy covers medical malpractices, see Tr. at 22:14-16 (Court), Legacy Medical responded that it relied upon Atwood's representations that the Insurance Policy covers medical malpractice and that those representations affected Legacy Medical's expectations, see Tr. at 22:17-25 (Shanor).   While Atwood's representations to Legacy Medical about the Insurance Policy's coverage may be relevant to Legacy Medical's claims for violations of the Unfair Practices Act and the Unfair Insurance Practices Act, what Atwood told Legacy Medical does not affect the contract's terms, which state

- 48 -

that the Insurance Policy does not apply to claims arising out of medical services, i.e., medical malpractice claims.   Moreover, Legacy Medical's repeated references to Atwood's misrepresentations of the Insurance Policy's terms imply that the Insurance Policy does not cover medical malpractice claims but that it might cover such claims if Atwood's misrepresentations were integrated into the Insurance Policy and modified its terms.

A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.   See N.M. R.Ann., Civ. UJI 13-822.   Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages."   Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d at 1247.   See McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d at 338.   In Armijo v. New Mexico Department of Transportation, the Court determined that the plaintiff's allegations failed to state a claim for breach of contract.   See 2009 WL 1329192, at *7-8.   The plaintiff argued that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."   2009 WL 1329192, at *7.   The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and it concluded that there was "not enough . . . to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract."   2009 WL 1329192, at *8.

Legacy Medical does not identify the Insurance Policy's provisions that Western Agricultural and Atwood allegedly breached.   Rather, Legacy Medical alleges that, based on Legacy Medical's discussions with Atwood, Legacy Medical "believed that it had procured medical malpractice insurance."   Response at 5.   Legacy Medical does not attempt to argue that the Insurance Policy is ambiguous, indeed it unambiguously excludes medical malpractice claims

such as the claim brought against Legacy Medical in the underlying state case.  The question whether an agreement contains an ambiguity is a matter of law.  See Mark V., Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citing Levenson v. Mobley, 1987-NMSC-102, ¶ 7, 744 P.2d 174, 176).  "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citation omitted).  If, however, the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235.  Here, the Insurance Policy contains a professional services conclusion that exempts coverage for injuries arising out of "[m]edical, surgical, dental, X-ray or nursing services treatment, advice or instruction."  Policy -- Part B § II(B)(1)(j)(4), at 3.  The Court concludes that no reasonable person could interpret this provision as not excluding coverage for claims alleging medical malpractice injuries.  See Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235.  Because the provision is not "reasonably and fairly susceptible of different constructions," no "ambiguity exists" as a matter of law.  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citing Vickers v. N. Am. Land Dev., Inc., 1980-NMSC-021, ¶ 9, 607 P.2d at 606).  Accordingly, under Legacy Medical's theory that the Insurance Policy -- by its terms alone -- covers medical malpractice claims, the Court dismisses with prejudice Legacy Medical's breach-of-contract claim.

**B.    THE COURT DISMISSES WITHOUT PREJUDICE LEGACY MEDICAL'S BREACH-OF-CONTRACT CLAIM UNDER LEGACY MEDICAL'S ALTERNATIVE THEORY THAT WESTERN AGRICULTURAL AND ATWOOD BREACHED THE INSURANCE POLICY AS MODIFIED BY ATWOOD'S MISREPRESENTATIONS, BECAUSE LEGACY MEDICAL HAS NOT PLED SUFFICIENT FACTS SUPPORTING THAT ATWOOD HAS THE AUTHORITY TO MODIFY THE INSURANCE POLICY'S TERMS AND THAT ATWOOD'S MISREPRESENTATIONS MODIFIED THE INSURANCE POLICY SUCH THAT IT COVERS MEDICAL MALPRACTICE CLAIMS.**

Legacy Medical does not state sufficient facts to demonstrate that Atwood's alleged misrepresentations modified the Insurance Policy's terms in such a way that the Insurance Policy now covers medical malpractice claims.  Legacy Medical argues that the cases that Western Agricultural cites in the MTD are distinguishable from the present dispute, because, in the cited cases, "there was no claim or allegation that the insurer or its agent led the insured to believe that it was covered for the type of claim asserted against it."  Response at 4.  Although Legacy Medical says that that the three cases cited in the MTD are inapposite, Legacy Medical does not cite any other cases in the Response to support its breach-of-contract claim.  See Response at 4-6 (discussing only Millers Cas. Ins. Co. of Tex. v. Flores, 1994-NMSC-058, 876 P.2d 227; Bernalillo Cty. Sheriffs Ass'n v. Cty. of Bernalillo, 1992-NMSC-065, 845 P.2d 789; Guaranty Nat'l Ins. Co. v. C de Baca, 1995-NMCA-130, 907 P.2d 210).  At the hearing, however, Legacy Medical argued that, in its Response, it cites a case in which an insurance agent misrepresented that a policy would start immediately, and the court held that the agent's "representation could modify the terms of the policy even though the policy provided that it didn't start exactly at that time."  Tr. at 18:3-5 (Shanor).  Although Legacy Medical did not specify the case name, based on the three cases that Legacy Medical discussed in the Response, the Court identifies this case as Guaranty National Insurance Co. v. C de Baca.  In Guaranty National Insurance Co. v. C de Baca, the New Mexico

Court of Appeals noted that, under the Supreme Court of New Mexico's precedent, "coverage would normally be expected to commence upon receipt of a premium by an agent." Guaranty National Insurance Co. v. C de Baca, 1995-NMCA-130, ¶ 8, 907 P.2d at 213 (citing Ellingwood v. N.N. Investors Life Ins. Co., 1991-NMSC-006, ¶ 805 P.2d at 75). Quoting Ellingwood v. N.N. Investors Life Inurance Co., the Court of Appeals of New Mexico explains:

> "Where an insurance company has authorized the agent to accept payment, the agent may well appear to have the authority to effect immediate coverage. We believe a typical customer would have a reasonable belief that in return for a payment of cash, and an authorization for subsequent automatic payments, he has purchased some immediate benefit in return, especially where the consumer questions the agent and is assured that this is the case."

Guaranty Nat'l Ins. Co. v. C de Baca, 1995-NMCA-130, ¶ 8, 907 P.2d at 213 (quoting Ellingwood v. N.N. Investors Life Ins. Co., 1991-NMSC-006, ¶ 16, 805 P.2d at 75).

Guaranty National Insurance Co. v. C de Baca does not support Legacy Medical's contention that Atwood's misrepresentations modified the Insurance Policy's terms, because Legacy Medical has pled no facts indicating that Atwood had the authority to alter the Insurance Policy's terms. In Guaranty National Insurance Co. v. C de Baca, C de Baca argued that Guaranty National Insurance Co.'s agent "lacked authority to bind coverage on February 3, 1989," but the Court of Appeals of New Mexico held that "Guaranty persuasively argues that it ratified the agent's binder, thus making the effective date of coverage February 3, 1989." Guaranty Nat'l Ins. Co. v. C de Baca, 1995-NMCA-130, ¶ 8, 907 P.2d at 213 (citing Jessen v. Nat'l Excess Ins. Co., 1989-NMSC-040, ¶ 21, 776 P.2d 1244, 1249; Grandi v. LeSage, 1965-NMSC-017, ¶ 26, 399 P.2d 285, 293; Ulibarri Landscaping Mat., Inc. v. Colony Mats., Inc., 1981-NMCA-148, ¶ 15, 639 P.2d 75, 79). Here, Legacy Medical does not allege any facts supporting that Atwood had the authority to alter the Insurance Policy's terms, which plainly exclude coverage for injuries that medical

treatment caused.  See Policy -- Part B § II(B)(1)(j)(4)-(5), at 3.  Indeed, the Insurance Policy

suggests that agents such as Atwood do not have the authority to amend the Insurance Policy's

terms, because the Insurance "[P]olicy's terms can be amended or waived only by endorsement

issued by [Western Agricultural] and made a part of this policy."  Policy -- Part B § III.B, at 14.

Legacy Medical does not allege any facts that Western Agricultural endorsed -- or ratified in any

way -- the misrepresentations that Legacy Medical alleges Atwood made about the Insurance

Policy.

    In Guaranty National Insurance Co. v. C de Baca, Guaranty National sought a declaratory

judgement that C de Baca's automobile Insurance Policy had lapsed.  See 1995-NMCA-130, ¶ 1,

907 P.2d at 211-12.  The Court of Appeals of New Mexico inquired "whether the trial court's

findings of fact and conclusions of law that C de Baca had no insurance coverage at the time of

her accident are supported by substantial evidence."  1995-NMCA-130, ¶ 1, 907 P.2d at 212.  On

the coverage's effective date issue, C de Baca argued that the insurance agent lacked the authority

to bind coverage on a particular date.  See Guaranty Nat'l Ins. Co. v. C de Baca, 1995-NMCA-

130, ¶ 10, 907 P.2d at 213.  In Ellingwood v. N.N. Investors Life Insurance Co., Inc., the Supreme

Court of New Mexico expounded on an insurance agent's authority to enter into a binding oral

agreement on an insurer's behalf.  See 1991-NMSC-006, ¶ 16, 805 P.2d at 75.

> Whether the agent has the authority to make parol contracts is a question for the
> jury when the facts are in dispute. . . .  By apparent authority of an agent, we mean
> such authority as a reasonably prudent person naturally would suppose the agent to
> possess in view of the insurer's conduct in clothing the agent with the trappings of
> actual authority.
>
> . . . .
>
> Where an insurance company has authorized the agent to accept payment, the agent
> may well appear to have the authority to effect immediate coverage.  We believe a
> typical customer would have a reasonable belief that in return for a payment of

cash, and an authorization for subsequent automatic payments, he has purchased some immediate benefit in return, especially where the consumer questions the agent and is assured that this is the case.

. . . .

But in the absence of other evidence that conclusively establishes these provisions were specifically read to [the insured], and understood by him to preclude immediate coverage, we think an issue of whether the agent had apparent authority to make an oral contract for temporary insurance is for the jury.  Such a contract for temporary insurance may vary or even contradict the language of the written application signed by the applicant.

Ellingwood v. N.N. Investors Life Ins. Co., Inc., 1991-NMSC-006, ¶¶ 15-17, 805 P.2d at 75-76

(citations omitted).  In Ellingwood v. N.N. Investors Life Insurance Co., Inc., the Supreme Court

of New Mexico held that "genuine issues exist concerning whether the agent had the apparent

authority to make a contract for temporary insurance."  1991-NMSC-006, ¶ 28, 805 P.2d at 78.

Accordingly, the Supreme Court of New Mexico reversed the trial court's grant of summary

judgment in the insurance company's favor.  See 1991-NMSC-006, ¶ 28, 805 P.2d at 78.

 The Court dismisses Legacy Medical's breach-of-contract claim, because Legacy Medical

has not pled sufficient facts supporting that Atwood had the authority to modify the Insurance

Policy's terms and, based on such authority, Atwood's alleged misrepresentations modified the

Insurance Policy's terms.  At the hearing, Legacy Medical argued that what is "ostensibly being

argued here is a motion for summary judgment because you're getting into issues [involving the

four] corners of the policy, what the policy says, [and] whether it's unambiguous, whether parol

evidence gets in . . . ."  Tr. at 14:16-20 (Shanor).  The problem with Legacy Medical's argument

is that it presumes that, to survive the MTD, it need not allege more than the possibility that the

Insurance Policy covers medical malpractice claims or, alternatively, that Atwood misrepresented

the insurance policy's terms and that Atwood had the authority to modify the Insurance Policy's

terms such that it covers medical malpractice claims.  At the hearing, Legacy Medical emphasized that it has not had the opportunity yet to conduct interrogatories or to submit requests for reproduction.  See Tr. at 20:20-21:1 (Shanor).  The Court explained, however, that, in federal court, parties cannot "file a claim and then say, well, let me look at discovery."  Tr. at 18:25-19:1 (Court).

To survive the MTD, Legacy Medical must plead some facts supporting either: (i) that the Insurance Policy's terms cover medical malpractice claims; or (ii) that, even though the Insurance Policy's terms do not cover medical malpractice claims, Atwood had the authority to modify the Insurance Policy statement's terms and did so by misrepresenting the its terms.  Legacy Medical has not pled adequately either theory.  Legacy Medical cannot state conclusory allegations and then wait until discovery in hope that it will uncover facts that will create a genuine issue of material fact whether: (i) the Insurance Policy covers medical malpractice claims; (ii) Atwood misrepresented the Insurance Policy's terms; or (iii) Atwood had the authority to modify the Insurance Policy's terms.  As the Court explained in Armijo v. New Mexico Department of Transportation, to survive a motion to dismiss, "'the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'"  Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *6 (quoting Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177).  Legacy Medical's conclusory statements that Legacy Medical contracted with Western Agricultural and Atwood for medical malpractice coverage and that Western Agricultural and Atwood breached that contract by failing to pay a covered loss, see Response at 4 (citing Legacy Medical Complaint ¶¶ 11-15, at 10), are not enough to state a claim upon which the Court may grant relief, see Fed. R. Civ. P.

12(b)(6).  At the hearing, the Court said that, "given that [Legacy Medical's counsel] thinks he can make some allegations that may survive a motion to dismiss, I'm inclined to let him amend."  Tr. at 30:7-12 (Court).  Legacy Medical said that it would like to conduct some discovery before filing a motion to amend and proposed Counterclaims, see Tr. at 33:6-19, but the Court said that "that's just not the way we do it in federal court," Tr. at 33:20-21 (Court).  Accordingly, under Legacy Medical's theory that Atwood's misrepresentations modified the Insurance Policy's terms, and Western Agricultural and Atwood subsequently breached those new terms, the Court dismisses without prejudice Legacy Medical's breach-of-contract claim and permits Legacy Medical to file a motion to amend the Legacy Medical Complaint and attach its proposed Counterclaims and Third-Party Complaint.[5]

---

[5]To survive a motion to dismiss, Legacy Medical must allege some facts to support that Atwood has apparent authority to modify the Insurance Policy through his representations to potential customers.  Legacy Medical alleges that Western Agricultural and Atwood "represented and contracted with Legacy for coverage for medical malpractice coverage which Legacy understood it was obtaining."  Legacy Medical Complaint ¶ 12, at 10.  The Insurance Policy does not cover medical malpractice claims, so Legacy Medical must show that Atwood had the apparent authority to modify the Insurance Policy and misrepresented the Insurance Policy's coverage to Legacy Medical.  Under New Mexico law, "[t]he power of an agent to bind the insurer is coextensive with [the agent's] apparent authority."  Ellingwood v. N.N. Investors Life Ins. Co., Inc., 1991-NMSC-006, ¶ 15, 805 P.2d at 75 (citing Douglas v. Mut. Benefit Health & Accident Ass'n, 1937-NMSC-097, ¶¶ 5-6, 76 P.2d 453, 456-57).  An agent possesses apparent authority where "a reasonably prudent person naturally would suppose the agent to possess in view of the insurer's conduct in clothing the agent with the trappings of actual authority."  Ellingwood v. N.N. Investors Life Ins. Co., Inc., 1991-NMSC-006, ¶ 15, 805 P.2d at 75.  The Supreme Court of New Mexico has reasoned that "'[t]he apparent authority of an agent is to be determined by the acts of the principal, . . . [and it] results from statements, conduct, lack of ordinary care, or other manifestation of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority.'"  Chevron Oil Co. v. Sutton, 1973-NMSC-111, ¶ 9, 515 P.2d 1283, 1286-87 (quoting 3 Am. Jur. 2d Agency § 74, at 477 (1962)).  Here, Legacy Medical has pled no facts suggesting that Atwood plausibly possesses apparent authority to modify the Insurance Policy in such a way that would bind Western Agricultural.  Legacy Medical must allege facts -- whether in the form of statements or policy provisions -- that indicate that Western Agricultural clothed Atwood "with the trappings of actual authority."  Ellingwood v. N.N. Investors Life Ins. Co., Inc., 1991-NMSC-006, ¶ 15, 805 P.2d at 75.

II.   **THE COURT DISMISSES WITHOUT PREJUDICE LEGACY MEDICAL'S CLAIM UNDER THE UNFAIR PRACTICES ACT AND THE UNFAIR INSURANCE PRACTICES ACT, BECAUSE LEGACY MEDICAL PLEADS ONLY CONCLUSORY ALLEGATIONS THAT ATWOOD MISREPRESENTED THE INSURANCE POLICY'S TERMS.**

Both Legacy Medical's claim under the Unfair Practices Act and Legacy Medical's claim under the Unfair Insurances Practices Act allege that Atwood misrepresented the Insurance Policy's terms in violation of New Mexico law.  Western Agricultural argues that Legacy Medical fails to state a claim under either the Unfair Practices Act or the Unfair Insurance Practices Act. See MTD at 8.  Western Agricultural contends that Legacy Medical does not allege a specific misrepresentation that Western Agricultural or Atwood made about the Insurance Policy.  See Reply at 6.  According to Western Agricultural, because "Legacy Medical's paucity of factual

---

Furthermore, Legacy Medical also must allege facts to support that Atwood misrepresented the Insurance Policy such that Legacy Medical and Western Agricultural formed a valid and binding contract under which Western Agricultural must defend or indemnify medical negligence claims against Legacy Medical.  Again, Legacy Medical alleges that Western Agricultural and Atwood "represented and contracted with Legacy for coverage for medical malpractice coverage which Legacy understood it was obtaining."  Legacy Medical Complaint ¶ 12, at 10.  While Legacy Medical asserts that it understood that the Insurance Policy would cover medical malpractice claims, Legacy Medical does not provide facts indicating that a contract covering medical malpractice exists.  A breach-of-contract claim must allege "the existence of a valid and binding contract."  McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d at 338.  Legacy Medical must show that there exists a contract between it and Western Agricultural that covers medical malpractice claims.  Because the Insurance Policy's terms do not cover medical malpractice claims, Legacy Medical must allege facts supporting that Atwood told Legacy Medical that Western Agricultural would either defend or indemnify medical malpractice claims against Legacy Medical.  Legacy Medical alleges that it "understood it was obtaining" an insurance policy that would cover medical malpractice claims, Legacy Medical Complaint ¶ 12, at 10, but the Legacy Medical Complaint contains insufficient facts supporting that Atwood misrepresented the Insurance Policy's terms in such a way.  To survive a motion to dismiss, Legacy Medical must allege more facts about Atwood's conduct and statements about the Insurance Policy to show that Legacy Medical and Western Agricultural formed a valid and binding contract that -- despite the Insurance Policy's terms -- covers medical malpractice claims.  Legacy Medical needs to show why it understood the Insurance Policy to cover medical malpractice claims by alleging facts about the representations that Atwood made that informed Legacy Medical's understanding of the coverage it would receive.

allegations is fatal," the Court should dismiss Legacy Medical's Unfair Practices Act and Unfair Insurance Practices Act counterclaims.  MTD at 9 (citing Fed. R. Civ. P. 12(b)(6)).  Legacy Medical counters that the Legacy Medical Complaint states sufficient factual allegations to supports its claims against Western Agricultural and Atwood for violating the Unfair Practices Act and the Unfair Insurance Practices Act.  See Response at 6.  Legacy Medical says that Atwood misrepresented the terms and conditions of Legacy Medical's Insurance Policy, and that, in Ellingwood v. N.N. Investors Life Insurance Co., Inc., the Supreme Court of New Mexico "held that an insurance policy 'is the product of the representations of the agent that reasonably have been relied upon and accepted by the applicant.'"  Response at 6 (quoting Ellingwood v. N.N. Investors Life Ins. Co., Inc. 1991-NMSC-006, ¶ 17, 805 P.2d at 76).  The Court concludes that Legacy Medical's bare factual allegations fail to state claims under the Unfair Practices Act and Unfair Insurance Practices Act upon which the Court can grant relief.

### A. THE COURT DISMISSES LEGACY MEDICAL'S UNFAIR PRACTICES ACT CLAIM, BECAUSE ALLEGATIONS IN THE LEGACY MEDICAL COMPLAINT LACK SUFFICIENT FACTS AND TRACK THE ELEMENTS OF AN UNFAIR PRACTICES ACT CLAIM.

The Court concludes that Legacy Medical does not state sufficient facts to support its Unfair Practices Act claim, because Legacy Medical does not allege specifically the misrepresentations that Atwood made about the Insurance Policy that Western Agricultural issued to Legacy Medical.  In its Response, Legacy Medical asserts that it has stated sufficient facts: (i) that Legacy Medical contacted Atwood for advice about appropriate coverage for Legacy Medical's business needs; (ii) that Western Agricultural and Atwood made misrepresentations about the terms and conditions of Legacy Medical's Insurance Policy; and (iii) that Legacy Medical "relied upon the professional advice and recommendations of Atwood and the insurance

quotes and proposals for coverage provided to them in determining the insurance coverage to purchase." Response at 7.  Western Agricultural counters that Legacy Medical's allegations under the Unfair Practices Act "closely track language from [the Unfair Practices Act's] unfair practices definitions without adding any actual facts."  MTD at 8.    At the hearing, Western Agricultural responded that "[i]n the allegations nowhere do they say Atwood told us that this Western Ag[ricultural] policy would cover professional liability claims."  Tr. at 25:10-12 (Noya). According to Western Agricultural, "nowhere in the complaint [does Legacy Medical] allege that Atwood was told this was the only policy that they wanted to purchase; that they told Atwood that they were counting on him to make sure their business had coverage for every type of calamity." Tr. at 25:17-21 (Noya).

To support its Unfair Practices Act claim, Legacy Medical incorporates the facts it alleges in all other claims, and it alleges following facts:

> 19.    [Western Agricultural], and Atwood, individually and as a duly authorized agent of [Western Agricultural], made oral and written material representations and statements to Legacy that were false or misleading when made or in the exercise of reasonable diligence should have been known by [Western Agricultural], and Atwood to be false and misleading.

> 20.    The false and misleading representations were material and made in connection with the sale of insurance coverage and services.

> 21.    The conduct of Atwood and [Western Agricultural] incurred in the regular course of Atwood's and [Western Agricultural]'s trade or commerce.

> 22.    Legacy relied upon the statements and representations which caused them to purchase the insurance believing, as was represented to them, that they had coverage for claims of medical malpractice and claims commonly asserted against providers of medical services.

Legacy Medical Complaint ¶¶ 19-22, at 11.  In contrast, to state a claim under the Unfair Practices Act, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 5, 166 P.3d at 1093 (citing N.M. Stat. Ann. § 57-12-12(D); Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311)).

Legacy Medical's factual allegations closely track an Unfair Practices Act claim's elements. See Ashcroft v. Iqbal, 556 U.S. at 678 (stating that a complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient). In Raja v. Ohio Security Insurance Co., 305 F. Supp. 3d 1206 (D.N.M. 2018)(Browning, J.), the plaintiff alleged that an insurance company made "false, misleading oral and written statements, visual descriptions and other representations in connection with the sale of [the insurance company's] goods and services." 305 F. Supp. 3d at 1252. The plaintiff also listed several ways in which the insurance company made misrepresentations, such as by "causing confusion" about the source and certification of the insurance company's goods and services, representing that the goods and services have "benefits or quantities that they do not have," and "using exaggeration, innuendo or ambiguity" about the goods and services. Raja v. Ohio Sec. Ins. Co., 305 F. Supp. 3d at 1252. The Court held that the factual allegations were lacking, see Raja v. Ohio Sec. Ins. Co., 305 F. Supp. 3d at 1253 ("Nowhere does [the plaintiff] allege specific facts relating to [the insurance company] or [its agent] making unfair or misleading statements in selling [the plaintiff] its insurance policy."), and, thus, the Court dismissed the plaintiff's Unfair Practices Act claim, see Raja v. Ohio Sec. Ins. Co., 305 F. Supp.

3d at 1253.

The Legacy Medical Complaint contains even fewer factual allegations than did the plaintiff's complaint in <u>Raja v. Ohio Security Insurance Co.</u>  Although Legacy Medical alleges that Atwood made misrepresentations about the Insurance Policy's terms, Legacy Medical offers no facts to support this allegation, and it does not identify which of the Unfair Practices Act's provisions Western Agricultural and Atwood allegedly violated.  <u>See</u> Legacy Medical Complaint ¶ 23, at 11 (alleging that "Atwood and [Western Agricultural]'s conduct constitutes a violation of the Unfair Practices Act, §57-12-1 et. seq., NMSA 1978"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly . . . reflects the threshold requirement of Rule 8(a)(2) that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief." (internal quotation marks omitted)(alteration in <u>Bell Atlantic Corp. v. Twombly</u>)).  Consequently, the Court dismisses Legacy Medical's Unfair Practices Act claim for failure to state a claim.  Furthermore, as stated at the hearing, because Legacy Medical alleges some additional facts that support its Counterclaim, the Court will permit Legacy Medical to file a motion to amend the Legacy Medical Complaint and attach its proposed Counterclaims and Third-Party Complaint.  <u>See</u> Tr. at 27:18-28:2 (Court); <u>id.</u> at 30:7-12 (Court).  Legacy Medical must identify which provision or provisions of the Unfair Practices Act Western Agricultural and Atwood allegedly violated, and it must provide some facts about Atwood's misrepresentations to Legacy Medical.[6]

---

[6]To survive a motion to dismiss, Legacy Medical must allege some facts to support that Atwood's representations -- as well as any additional representations by Western Agricultural -- were in fact misleading or deceptive.  Under New Mexico law, "the complaining party must show that the party charged made an 'oral or written statement, visual description or other representation' that was either false or misleading."  <u>Stevenson v. Louis Dreyfus Corp.</u>, 1991-NMSC-051, ¶ 13, 811 P.2d at 1311 (quoting <u>Ashlock v. Sunwest Bank of Roswell, N.A.</u>, 1988-

**B.    THE COURT DISMISSES LEGACY MEDICAL'S UNFAIR INSURANCE PRACTICES ACT CLAIM, BECAUSE ALLEGATIONS IN THE LEGACY MEDICAL COMPLAINT LACK SUFFICIENT FACTS.**

The Court concludes that Legacy Medical does not state sufficient facts to support its

Unfair Insurance Practices Act claim for the same reasons that it dismisses Legacy Medical's

---

NMSC-026, ¶ 4, 753 P.2d 346, 347).  Furthermore, the plaintiff must allege facts indicating that "the representation . . . [is] of the type that 'may, tends to or does, deceive or mislead any person.'" Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311 (quoting Ashlock v. Sunwest Bank of Roswell, N.A., 1988-NMSC-026, ¶ 4, 753 P.2d at 347).  Here, Legacy Medical merely alleges that Western Agricultural and Atwood, "individually and as a duly authorized agent of [Western Agricultural], made oral and written material representations and statements to Legacy that were false or misleading when made or in the exercise of reasonable diligence should have been known by [Western Agricultural] and Atwood to be false and misleading."  Legacy Medical Complaint ¶ 19, at 11.    Legacy Medical further alleges that "[t]he false and misleading representations were material and made in connection with the sale of insurance coverage and services," Legacy Medical Complaint ¶ 20, at 11, and that Legacy Medical subsequently "relied upon the statements and representations which caused them to purchase the insurance believing, as was represented to them, that they had coverage for claims of medical malpractice and claims commonly asserted against providers of medical services," Legacy Medical Complaint ¶ 21, at 11.

Nowhere does Legacy Medical allege facts supporting that Atwood's representations are false and misleading or of the type that may deceive or mislead a person.  See Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311.  A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  Legacy Medical's bald allegations that Atwood made representations that are false and misleading are insufficient, because they mirror the elements of an Unfair Practice Act cause of action.  The Court cannot conclude that Legacy Medical states a claim that Atwood's statements are of the type that would deceive or mislead a person based on the allegation that Atwood's representations were false and misleading alone.  Legacy Medical must give the Court "reason to believe that [Legacy Medical] has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177.  As the Court admonished at the hearing, Legacy Medical cannot take a wait-and-see approach and hope that discovery will reveal some set of facts to support its claim that Atwood's representations were false and misleading.  See Tr. at 18:25-19:1 (Court); id. at 33:20-21 (Court). At the hearing, the Court noted that Legacy Medical's counsel "thinks he can make some allegations that may survive a motion to dismiss."  Tr. at 30:7-12 (Court).  Accordingly, the Court will allow Legacy Medical to file a motion to amend that states additional, available facts to support its claims, and attach a proposed Counterclaims and Third-Party Complaint containing such factual allegations.  Finally, for reasons discussed above, Legacy Medical must identify which of the Unfair Practices Act's provisions Western Agricultural and Atwood allegedly violated.

Unfair Practices Act -- because Legacy Medical does not allege specifically the misrepresentations that Atwood made about the Insurance Policy that Western Agricultural issued to Legacy Medical. Moreover, Legacy Medical does not state which exact section of the Unfair Insurance Practices Act Western Agricultural and Atwood allegedly violated, which makes it difficult to determine which cause of action the Legacy Medical attempts to allege.  Western Agricultural argues that Legacy Medical "alleges generally that unspecified conduct by Western Agricultural violated one or more of" the Unfair Insurance Practices Act's provisions and that Legacy Medical does not specify which provision Western Agricultural purportedly has violated.  MTD at 8-9.  To support its Unfair Insurance Practices Act claim, Legacy Medical incorporates the facts it alleges in all other claims, and it alleges only one additional fact: "Atwood and [Western Agricultural], each and all of them, made, published and presented misrepresentations as to the benefits, advantages, conditions and/or terms of the policy to the detriment of Legacy."  Legacy Medical Complaint ¶ 26, at 12.  This allegation -- combined with Legacy Medical's other factual allegations -- is not enough to state a claim to survive the MTD.  As with Legacy Medical's Unfair Practices Act claim, Legacy Medical must allege additional facts that support its claim that Atwood made misrepresentations about the Insurance Policy that Western Agricultural issued to Legacy Medical.

Legacy Medical further alleges that Western Agricultural and Atwood violated N.M. Stat. Ann. §§ 59A-16-4 and 59A-16-20.  See Legacy Medical Complaint ¶ 27, at 12.  Because N.M. Stat. Ann. §§ 59A-16-4 and 59A-16-20 contain numerous statutory subsections, it is not possible to tell from the Legacy Medical Complaint what cause of action Legacy Medical attempts to assert under the Unfair Insurance Practices Act.  See Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1132332, at *18 (D.N.M. March 28, 2012)(Browning, J.)(noting that the Unfair Insurance Practices Act "contain[s] [many] potential causes of action and proscribe a wide variety of different

conduct.  It is difficult . . . to say that the Plaintiffs' allegations, when the Court cannot even determine what cause of action the Plaintiffs intend to bring [or] provide [the defendant] with fair notice." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555 n.3)).  In Yumukoglu v. Provident Life & Accident Insurance Co., the plaintiff alleged that the defendant "violate[d] one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)."  131 F. Supp. 2d at 1227.  Judge Black concluded that the plaintiff's allegation was insufficient, because the plaintiff did "not specify which of the fifteen provisions of this section he feels [the defendant] has violated."  Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d at 1227.  Judge Black reasoned:

> [T]he Court cannot perceive which subsection could have been violated under the fact alleged.  At the very least, [the plaintiff] has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, it is not clear either what [the plaintiff] is claiming or to what relief he is entitled under § 56A-16-20.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d at 1227.

Echoing Judge Black's reasoning, the Court has noted that "[t]he Unfair Insurance Practices Act is not a simple statute that contains one or two causes of action; it contains many potential causes of action."  Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1132332, at *19. Without a more specific reference to a statutory subsection within the Unfair Insurance Practices Act, or some potential elements upon which Legacy Medical intends to rely, it is not possible to determine which cause of action Legacy Medical attempts to set forth.  See Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1132332, at *19.  Consequently, the Court dismisses Legacy Medical's Unfair Insurance Practices Act claim for failure to state a claim.  Furthermore, as stated at the hearing, because Legacy Medical alleges some additional facts that may support its counterclaim, the Court will permit Legacy Medical to file a motion to amend the Legacy Medical

Complaint and attach its proposed Counterclaims and Third-Party Complaint.  See Tr. at 27:18-28:2 (Court); id. at 30:7-12 (Court).[7]

---

[7]As with Legacy Medical's Unfair Practices Act claim, for Legacy Medical's Unfair Insurance Practices Act claim to survive a motion to dismiss, Legacy Medical must allege some facts to support that Atwood's representations -- as well as any additional representations by Western Agricultural -- were in fact misleading or deceptive.  The Unfair Insurance Practices Act provides a private right of action for violations of its provisions.  See N.M. Stat. Ann. § 59A-16-30 ("Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages.").  The Unfair Insurance Practices Act regulates insurance business practices that "constitute unfair methods of competition or unfair or deceptive acts or practices."  N.M. Stat. Ann. § 59A-16-2.  Here, Legacy Medical adopts and incorporates its allegations for other claims, see Legacy Medical Complaint ¶ 25, at 12, and it additionally alleges that Western Agricultural and Atwood "published and presented misrepresentations as to the benefits, advantages, conditions and/or terms of the policy to the detriment of Legacy," Legacy Medical Complaint ¶ 26, at 12.  Legacy Medical also alleges that Western Agricultural and Atwood's conduct violated N.M. Stat. Ann. §§ 59A-16-4 and 59A-16-20.  See Legacy Medical Complaint ¶ 27, at 12.

As the Court notes above, nowhere does Legacy Medical allege facts supporting that Atwood's representations are false and misleading or of the type that may deceive or mislead a person.  See Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311.  A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  The Court cannot conclude that Legacy Medical states a claim that Atwood's statements were false and misleading based on the allegation that Atwood's representations were false and misleading alone.  Legacy Medical must give the Court "reason to believe that [Legacy Medical] has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177.  Additionally, Legacy Medical must identify which of the Unfair Insurance Practices Act's provisions Western Agricultural and Atwood allegedly violated.  As the Court reasoned in Estate of Gonzales v. AAA Life Insurance Co., the Unfair Insurance Practices Act "contain[s] [many] potential causes of action and proscribe a wide variety of different conduct.  It is difficult . . . to say that the Plaintiffs' allegations, when the Court cannot even determine what cause of action the Plaintiffs intend to bring [or] provide [the defendant] with fair notice."  2012 WL 1132332, at *18 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555 n.3).  Section 59A-16-20 contains fifteen provisions, and, thus, Legacy Medical must "specify which of the fifteen provisions of this section [it] feels [Western Agricultural and Atwood have] violated."  Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d at 1227.  Accordingly, the Court will allow Legacy Medical to file a motion to amend that states additional, available facts to support its claims, and attach a proposed Counterclaims and Third-Party Complaint containing such factual allegations.  Finally, for reasons discussed above, Legacy Medical must identify which of the Unfair Insurance Practices Act's provisions Western Agricultural and Atwood allegedly violated.

**IT IS ORDERED** that: (i) Western Agricultural Insurance Company's Motion to Dismiss Counterclaims by Legacy Medical Services, LLC, filed October 30, 2019 (Doc. 11)("MTD"), is granted; and (ii) Defendant/Third-Party Plaintiff Legacy Medical Services, LLC may file a motion to amend the Answer of Defendant Legacy Medical Services, LLC, Counterclaim and Third-Party Complaint, filed September 27, 2019 (Doc. 6), and attach its proposed Counterclaims and Third-Party Complaint.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jennifer A. Noya
Sonya R. Burke
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs/Third-Party Defendants Jacqueline Marinovich, FNP-C, and
        Marva Johnston, NP*

Richard E. Olson
Stephen Shanor
Chelsea Ray Green
Hinkle Shanor LLP
Roswell, New Mexico

    *Attorneys for the Defendant/Third-Party Plaintiff Legacy Medical Services, LLC*

Gregory L. Biehler
Lewis Brisbois Bisgaard & Smith LLP
Albuquerque, New Mexico

    *Attorneys for the Third-Party Defendant Randy Atwood*